BROWN *v.* STATE

[No. 296, September Term, 1960.]

612

*Decided June 16, 1961.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, PRESCOTT, HORNEY and MARBURY, JJ.

*Douglas G. Bottom* for the appellant.

*Edward S. Digges, Special Assistant Attorney General,*
with whom were *Thomas B. Finan, Attorney General, Joseph
S. Kaufman, Deputy Attorney General, Saul A. Harris* and
*John Paul Rogers, State's Attorney* and *Assistant State's At-*

*torney,* respectively, for Baltimore City, on the brief, for the appellee.

MARBURY, J., delivered the opinion of the Court.

Rose Brown was indicted in the usual form alleging perjury in her testimony in a civil case titled Baltimore Federal Savings and Loan Association, a body corporate, plaintiff, versus Albert R. Brown and Rose Brown, defendants, and tried in the Superior Court of Baltimore City on December 10, 1958. This case was a suit on a confessed judgment note purportedly signed by Rose Brown and Albert R. Brown, payable to the order of Baltimore Standard Heating, Inc., endorsed without recourse to the Baltimore Federal Savings and Loan Association, which claimed to be a holder thereof in due course. At the trial of the case Rose Brown denied that she had signed the note. The indictment was filed on May 6, 1959, the defendant arraigned on May 20, when she pleaded not guilty, and trial had on October 18 and 19, 1960. She was found guilty by the jury and sentenced to not more than six months in the Maryland State Reformatory for Women from October 20, 1960. She appeals from the judgment and sentence in that case.

In the indictment it was alleged that she testified wilfully and falsely under oath "that she did not sign papers in connection with any transaction with the Baltimore Standard Heating Company, that she did not affix her signature as Mrs. Rose Brown to a certain promissory note marked Account T.1R 76090; that the signature on said promissory note is not her signature; that she did not sign said note; that the name Rose Brown appearing on said note is not her signature; that she did not sign said paper or any other papers in connection with any transaction with the Baltimore Standard Heating Company."

The State's Attorney, by agreement with defense counsel, read certain portions of the record in the civil trial to prove that the defendant did make the statements attributed to her in the indictment. The State produced as a witness Symone S. Spector, attorney for Baltimore Federal Savings and Loan Association, who identified the pleadings filed in the civil case, which were introduced as State's Exhibits Nos. 1, 3 and

4, and the note purporting to bear the signature of the defendant, Rose Brown, which was admitted in evidence, over objection, as State's Exhibit No. 2. The State then produced William W. McIntyre, Assistant Home Improvement Manager of the Equitable Trust Company, who identified certain papers which were used by Captain Anthony F. Nelligan, commanding officer of the crime laboratory of the Baltimore City Police, in a hand-writing analysis, as papers which were regular business records of that company. These records were introduced as State's Exhibits Nos. 6, 7 and 8. The State also introduced as State's Exhibit No. 5 samples of the signature of Rose Brown, taken at the time of the hearing of the civil case. Captain Nelligan then testified for the State that it was his opinion that the signatures appearing on State's Exhibits Nos. 2, 5, 6, 7 and 8 were all by the same author. That was the total evidence presented by the State, which may be briefly stated as follows: (a) that they produced evidence that the statements alleged to have been false were made, and (b) that the signature on the note was compared with three signatures believed to be those of the defendant and three signatures known to be those of the defendant, and that the hand-writing expert testified that in his opinion the signatures were written by the same person. At the end of the State's case the defendant's motion for a directed verdict was overruled.

The appellant testified in her own behalf as to her knowledge of the transaction made by her husband, Albert R. Brown, with the Baltimore Standard Heating Company, but denied that she obligated herself in any way for the purchase of anything from that company and again denied signing the note which had been admitted in evidence as State's Exhibit No. 2.

Albert R. Brown testified that he had signed a contract, which bore only his signature, which was admitted in evidence as defendant's Exhibit No. 1, on the promise that he was going to "get a rebate of $800.00 and $150.00 for my furnace"; and that he also signed the note in question. He also testified that in his presence she was asked to sign the papers

but that she refused. Through this witness there was admitted as defendant's Exhibit No. 2 an Advance Notice to Applicant for FHA Title I Loan addressed to Mr. and Mrs. Albert R. Brown; a paper attached to defendant's Exhibit No. 1 which was dated September 28, 1957, signed by William Endicter and Gilbert B. Magaziner, the salesmen for Baltimore Standard Heating Company, showing that "whatever is done in manner of getting Bank approval places Mr. and Mrs. Brown under no obligation", as defendant's Exhibit No. 3; the credit application for the loan bearing only the signature of Albert R. Brown, as defendant's Exhibit No. 4; the completion slip for the installation of a furnace bearing only the signature of Albert R. Brown, as defendant's Exhibit No. 5; another contract of Baltimore Standard Heating, Inc., which was signed by Albert R. Brown only, as defendant's Exhibit No. 6.

At the end of all of the evidence the appellant renewed her motion for directed verdict, which was denied by the trial court.

On this appeal the appellant presents three assignments of prejudicial error. She claims that the trial court erred (1) in admitting into evidence State's Exhibit No. 2—note purportedly signed by the appellant; (2) in failing to grant appellant's motion for directed verdict; and (3) in its instructions to the jury.

We find no error in the admission into evidence of State's Exhibit No. 2, which was the confessed judgment note that appellant denied signing in the civil case in the Superior Court of Baltimore City. The note in question was the crux of that case and her testimony in that proceeding with reference to the signature thereon, purporting to be hers, was the basis for the charge of perjury laid in the indictment in this case. Its introduction as evidence in this case was not only pertinent and material to the issue, but was admissible as original primary evidence. Cf. *Hodel v. State,* 112 Md. 115, 121, 75 Atl. 1056.

The appellant's second and main contention is that the trial court erred in failing to grant her motion for directed verdict. There have been few cases in Maryland dealing with the crime

of perjury and, so far as we know, none where the quantum of proof necessary for conviction has been before this Court.

Perjury is generally described as set forth in Wharton, *Criminal Law*, § 1511 (12th ed. 1932), p. 1782, as follows:

> "The offense consists in swearing falsely and corruptly, without probable cause of belief; not in swearing rashly or inconsiderately, according to belief. The false oath, if taken from inadvertence or mistake, cannot amount to voluntary or corrupt perjury. * * * That the oath is wilful and corrupt must not only be charged in the indictment, but must be supported on trial. An oath is wilful when taken with deliberation, and not through surprise or confusion, or a bona fide mistake as to the facts, in which latter cases perjury does not lie."

The author, further in discussing the proof required in perjury cases, in § 1585, at page 1838 states:

> "The rule that testimony of a single witness is not sufficient to negative the alleged false oath is not merely technical, but is founded on substantial justice. There must either be two witnesses to prove such falsity, or one witness with material and independently established corroborative facts. * * *"

At common law it was originally held that to warrant a conviction of perjury the falsity had to be shown by direct and positive testimony of two witnesses. 7 Wigmore, *Evidence*, § 2040 (3rd ed. 1940). The rule has been said to be deeply rooted in past centuries having its inception in the Star Chamber. 7 *id.* §§ 2030 and 2044. Perjury was treated as a high misdemeanor which required a greater measure of proof than any other crime known to law, treason alone excepted.

However, the rule has been relaxed so as to allow a conviction of perjury to stand if there are two witnesses, or one witness corroborated by circumstances proved by independent testimony. 41 Am. Jur., *Perjury*, § 67; 70 C. J. S., *Perjury*, § 68. The testimony of one witness and other independent corroborative evidence must be of such a nature so as to be

of equal weight to that of at least a second witness, thus foreclosing any reasonable hypothesis other than the defendant's guilt. *Weiler v. United States,* 323 U. S. 606; *United States v. Neff,* 212 F. 2d 297; *United States v. Nessanbaum,* 205 F. 2d 93; 70 C. J. S. § 60. It has been held that circumstantial evidence, including documentary evidence, springing from the defendant himself, may take the place of a "living witness". *United States v. Wood,* 39 U. S. 430; *United States v. Palese,* 133 F. 2d 600, *United States v. Nessanbaum, supra; United States v. Flores-Rodriguez,* 237 F. 2d 405; *United States v. Spaeth,* 152 F. Supp. 216; *People v. Doody,* (N. Y.) 64 N. E. 807; *Metcalf v. State,* (Okla.) 129 P. 675; *Mallard v. State,* (Ga.) 90 S. E. 1044; *State v. Storey,* (Minn.) 182 N. W. 613; *State v. Cerfoglio,* (Nev.) 205 P. 791, and 213 P. 102; *Miles v. State,* (Texas) 165 S. W. 567; *Marvel v. State,* (Del.) 131 Atl. 317.

We need not undertake to determine what may be the proper rule today as to the quantum of proof of perjury which would be required in other circumstances. On the evidence in this case we hold that the documentary evidence consisting of the note itself, together with the samples of the appellant's signature written during the civil trial, the papers emanating from the Equitable Trust Company—which she admitted signing—originating with the appellant; as well as the testimony of the expert witness, and evidence that the work for which the note was given to secure payment was performed, were all properly submitted to the jury for its consideration. In addition the appellant testified in her own behalf and the jury was thus able to observe her demeanor on the stand and judge the credibility of her testimony. If the evidence offered was believed then the jury was entitled to conclude that appellant's testimony, under oath, that she did not sign the note was wilful and false. Likewise the jury had to consider whether the testimony given by the appellant with reference to the signature on the note attributed to her was given falsely and wilfully, or by mistake or inadvertence.

We conclude, therefore, that the trial court was correct in refusing to grant the appellant's motion for a directed verdict at the conclusion of all of the evidence.

With reference to the appellant's contention that the trial

judge erred in his instructions to the jury, the appellant contends that the trial judge committed error when he stated in his charge to the jury: "* * * The question for you to resolve by your verdict is whether you believe the State's evidence or that of the defense." This excerpt, standing alone and taken out of context, might seem an over-simplification of the appellant's third and final contention. However, when considered with the entire charge to the jury we find no prejudicial error to have been committed. The trial judge was careful to preface his charge by stating substantially as provided in Article XV, § 5 of the Constitution of Maryland, that they were judges of both the law and the facts in this criminal case, that what he had to say was merely advisory, intended to help the jury, but the jury was at liberty to reject the court's advice on the law and to arrive at its own independent conclusion on the law if it desired to do so. Maryland Rule 739 b; *Canter v. State,* 220 Md. 615, 155 A. 2d 498; *Gibson v. State,* 204 Md. 423, 104 A. 2d 800. Moreover, he aptly stated in his charge that:

> "The pertinent language in the statute defining the crime of perjury is as follows: 'An oath or affirmation if made wilfully and falsely in any of the following cases shall be deemed perjury. First in all cases where false swearing would be perjury at common law.'
>
> "The essential features of perjury at common law are the wilful making, when under oath in a judicial proceeding or court of justice, of a false statement material to the issue or point of inquiry.
>
> "The offense consists in the swearing falsely and corruptly and not through a mistake. There must be a specific evil intent to falsify or deceive.
>
> "If the defendant believed her testimony to be true at the time she testified under oath, then she is not guilty of perjury but if she knew her testimony was false, then she may be guilty of the charge."

We think the case was presented to the jury fairly and find no error that would justify a reversal.

*Judgment affirmed, with costs.*