624 A.2d 503

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

George J. GOLDSBOROUGH, Jr.

Misc. Docket (Subtitle BV) No. 3, Sept. Term, 1992.

Court of Appeals of Maryland.

May 12, 1993.

---

**344**

Melvin Hirshman, Bar Counsel, and John C. Broderick, Asst. Bar Counsel for the Attorney Grievance Com'n of Maryland, for petitioner.

Peter Axelrad, Baltimore, Pamela A. Bresnahan, Washington, DC, for respondent.

Argued before MURPHY, C.J., RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ., and CHARLES E. ORTH, Jr., Judge (Retired, Specially Assigned).

CHASANOW, Judge.

■ This extremely troubling disciplinary matter reached this Court when the Attorney Grievance Commission (the Commission) filed a petition for disciplinary action against George J. Goldsborough, Jr. alleging violations of the Disciplinary Rules of the Code of Professional Responsibility and the Maryland Rules of Professional Conduct. The petition arose from a complaint filed with the Commission by Catharine Sweitzer, a former client of Goldsborough, as well as from other information the Commission discovered while investigating Sweitzer's complaint. In accordance with Rule BV9.b. of the Maryland Rules of Procedure, we transmitted the matter to Judge D. William Simpson of the Circuit Court for Wicomico County for a hearing on the charges. The conclusions we reach below are based on Judge Simpson's findings of fact, which we consider *prima facie* correct and will not disturb unless they are shown to be clearly erroneous. *Attorney Grievance Comm'n v. Powell*, 328 Md. 276, 287–88, 614 A.2d 102, 108 (1992); *Attorney Grievance Comm'n v. Bakas*, 323 Md. 395, 402, 593 A.2d 1087, 1091 (1991); *Attorney Grievance Comm'n v. Winters*, 309 Md. 658, 665, 526 A.2d 55, 58 (1987).

## I. *Facts*

Catharine Sweitzer retained Mr. Goldsborough to seek recovery for injuries she received in 1978 when she was accidentally shot by a trespassing deer hunter. In connec-

tion with his representation, Goldsborough visited Sweitzer at her home. At one point during the visit, Goldsborough told Sweitzer she was a "bad girl," pulled her over his knee, and lightly spanked her several times on her buttocks. A second incident occurred in Goldsborough's Easton office when Sweitzer visited to tell Goldsborough she had become engaged to be married. Goldsborough became upset with Sweitzer because he believed her engagement might make a jury less sympathetic to her injuries, thereby affecting her lawsuit. Again calling her a "bad girl," he pulled Ms. Sweitzer across his knee and, as before, spanked her lightly several times.

While investigating Sweitzer's complaint, the Commission's investigators learned of allegations that Goldsborough had behaved improperly toward at least one other female client, and had also repeatedly spanked a young woman who had been his personal secretary several years earlier. Ultimately, both of these women testified before the Commission's Inquiry Panel and before Judge Simpson. The client, Peggy Porter, had retained Goldsborough in the summer of 1984 to represent her in a divorce proceeding. At a meeting in Goldsborough's office in the fall of that year she became emotionally upset and, as she was leaving, Goldsborough put his arm around her and kissed her on the neck and cheek. She pulled back, said "I don't think you should be doing this," and left the office. Porter subsequently retained another attorney.

In January 1986, Sandy Schisler, then seventeen years old, applied to Goldsborough's office for a job as a secretary. She was interviewed once and then called back by Goldsborough for a second interview which took place in Goldsborough's office at which only she and Goldsborough were present. During this second interview, Goldsborough explained that he intended to teach Schisler to be a good secretary and would accomplish this by disciplining her with spankings. He demonstrated this by placing her over his knee and patting her on the buttocks. Schisler was offered a job and eventually became Goldsborough's personal secre-

tary.[1] Schisler testified that during her employment from January 1986 to November 1987, Goldsborough spanked her approximately once a week. By Schisler's account, on "more than just a handful" of occasions Goldsborough required her to bare her buttocks for the spankings. She testified that these disciplinary measures were provoked by typing errors she made in Goldsborough's documents and elementary mistakes that Goldsborough called "no brainers." Schisler testified that she did not want to be spanked, but felt that Goldsborough was trying to teach her to be a good secretary. When asked if she believed she could lose her job if she did not submit to the spankings, Schisler testified that she thought so, "because I wouldn't be learning, and I wouldn't be trying to correct my mistakes." In November 1987, Goldsborough's wife heard of the spankings and suggested that Schisler leave her job. Mrs. Goldsborough referred Schisler to counseling, for which Mrs. Goldsborough paid. Schisler also received over three times her gross weekly salary in severance pay.

In written response to an inquiry from Bar Counsel, and in sworn testimony before the Inquiry Panel and Judge Simpson, Goldsborough has consistently denied spanking Catharine Sweitzer. In written response to another inquiry from Bar Counsel asking Goldsborough whether he had "subjected [Sandy Schisler] to regular spankings that continued throughout the course of her employment," Goldsborough said that "at no time during the course of her employment here, was Ms. [Schisler] ever 'subjected' to anything, including, specifically, 'regular spankings.' " In subsequent testimony before the Inquiry Panel and Judge Simpson, however, Goldsborough admitted that he had in fact spanked Schisler on one occasion when he became frustrated with her poor work. He explained that she told

---

1. When asked why she took the job after this first unusual encounter with Goldsborough, Schisler testified that "I was young and wanted to do well. I wanted, I needed a job that I could go to after school and after I graduated, and if I was going to be a good secretary, I thought this is what I guess I have got to do."

him that was how her father or grandfather had "gotten her attention." Goldsborough denied under oath that he had spanked Schisler on any regular basis, or that he had ever spanked her bare buttocks. Judge Simpson found by clear and convincing evidence, however, that Schisler's testimony was truthful.

Bar Counsel also alleged that during the investigation, Goldsborough failed to cooperate in responding to the Commission's inquiries. In her complaint about the spankings, Catharine Sweitzer had stated, "I know of two dissolutions of partnerships that have stemmed directly from this unethical misconduct." In his written response to Bar Counsel's inquiry on this point, Goldsborough stated, "No partnerships of which I have ever been a member have been dissolved." What the evidence in fact established was that Goldsborough was engaged in the practice of law in 1983 as a member of two professional associations (P.A.'s), one in Easton and the other in Annapolis. In late 1982 and early 1983, members of the Easton P.A. became concerned about continuing allegations regarding Goldsborough's relationship with female clients and employees. One employee of the firm discovered a book entitled *Spanking and a Single Girl* in Goldsborough's desk. There were apparently rumors and reports of Goldsborough's spanking clients. As a result, the Easton P.A. adopted a policy that Goldsborough not accept domestic relations cases representing female clients. Although he agreed to accept this policy, Goldsborough violated it soon thereafter. For these reasons, and because of other internal conflicts over economic policies, the Easton P.A. terminated Goldsborough's employment on July 23, 1983. As a spillover, the Annapolis P.A. also terminated Goldsborough's employment. Judge Simpson found that Goldsborough's assertion that no partnerships of which he was a member had ever been dissolved was technically correct, noting that it was not a partnership that was terminated but his membership in a professional association. Judge Simpson also found, however, that this response was "anything but candid."

At the close of the evidence, Judge Simpson found that the incidents involving the spanking of Catharine Sweitzer and the kissing of Peggy Porter, occurring prior to January 1, 1987, constituted a violation of Disciplinary Rules 1–102(A)(1), (5), and (6).[2] Judge Simpson also found that the incidents involving Sandy Schisler which occurred over a period of time terminating after January 1, 1987 constituted a violation of Rules 8.4(a) and (d) of the Rules of Professional Conduct.[3] Finally, Judge Simpson found that Goldsborough's misrepresentations in his correspondence with Bar Counsel and his false testimony before the Inquiry Panel violated Rule 8.1 of the Rules of Professional Conduct.[4]

2. Former DR 1–102 provided, in relevant part:
   "DR 1–102 Misconduct.
   (A) A lawyer shall not:
   　(1) Violate a Disciplinary Rule.
   
   　　　　*　　*　　*　　*　　*　　*
   
   　(5) Engage in conduct that is prejudicial to the administration of justice.
   　(6) Engage in any other conduct that adversely reflects on his fitness to practice law."

3. Rule 8.4 provides, in relevant part:
   "**RULE 8.4 MISCONDUCT**
   It is professional misconduct for a lawyer to:
   (a) violate or attempt to violate the Rules of Professional Conduct,
   . . .
   
   　　　　*　　*　　*　　*　　*　　*
   
   (d) engage in conduct that is prejudicial to the administration of justice."
   This Court adopted the Rules of Professional Conduct on April 15, 1986 to govern all conduct from January 1, 1987.

4. Rule 8.1 provides:
   "**RULE 8.1 BAR ADMISSION AND DISCIPLINARY MATTERS**
   An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
   (a) knowingly make a false statement of material fact; or
   (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6."

## II. *Goldsborough's Exceptions*

Goldsborough raises a number of exceptions to Judge Simpson's findings of fact and conclusions of law. We address them seriatim.

### A.

Upon the completion of its investigation, and in accordance with Maryland Rule BV6.a.4., Bar Counsel referred Sweitzer's complaint to an Inquiry Panel. After a two-day hearing, the Inquiry Panel filed its findings and recommendations with Bar Counsel, who transmitted these recommendations to the Review Board as per Rule BV6.d.4(b). After its review of the Inquiry Panel's report, the Review Board, under Rule BV9.a., directed Bar Counsel to file a petition for disciplinary action in this Court. Goldsborough's initial contention is that the Commission violated his due process rights by failing to provide adequate notice of the charges against him throughout the progressive stages of this disciplinary process.

Specifically, Goldsborough objects to: (1) the Inquiry Panel's findings that he violated Rules 8.1(a) and (b), charges which were not specifically raised before or during the Inquiry Panel proceedings, and (2) the Review Board's finding that he violated DR 1–102(A)(5) when the Inquiry Panel found no such violation. He also objects to the petition's charge that he violated DR 1–102(A)(1) & (6) and Rule 8.4(a) and excepts to Judge Simpson's finding violations thereof when the Review Board did not specifically find he had violated these Rules. Finally, he contends that he was surprised by and unprepared for the testimony of Ms. Porter and Ms. Schisler and was "prejudiced" in the preparation of his defense at the Inquiry Panel. Overall, he protests what he considers a "moving target" of charges and witnesses.

Of course, due process considerations dictate that attorneys are entitled to notice of the charges against them when disciplinary proceedings begin. *In re Ruffalo*, 390

U.S. 544, 550–51, 88 S.Ct. 1222, 1226, 20 L.Ed.2d 117, 122 (1968). Formal charges of misconduct do not exist, however, until a petition for disciplinary action is docketed in this Court. *Attorney Grievance Comm'n v. Harris,* 310 Md. 197, 203, 528 A.2d 895, 898 (1987), *cert. denied,* 484 U.S. 1062, 108 S.Ct. 1020, 98 L.Ed.2d 985 (1988). Further,

> "[a]s long as these charges are 'sufficiently clear and specific' so as to reasonably inform the respondent what he is compelled to answer for and defend against, and there are no substantive transgressions of the Commission's own Guidelines or the BV Rules, the respondent is generally precluded from contesting what occurred in the preliminary stages before the Inquiry Panel and the Review Board leading to the filing of charges in this Court." (Citation omitted).

*Id.* Although Rule BV6.a.4 generally requires Bar Counsel to notify the attorney when the matter is first referred to an Inquiry Panel, this is not a due process requirement. As we have previously said,

> "proceedings conducted by the Inquiry Panel and Review Board are similar to the proceedings conducted by a grand jury in criminal cases. They are investigatory in nature—designed to aid in determining whether disciplinary action is warranted—and informal to the extent that the rules of evidence need not apply. Moreover, any irregularity in the proceedings before the Inquiry Panel and Review Board ordinarily will not amount to a denial of due process, as long as the lawyer is given notice and an opportunity to defend in a full and fair hearing following the institution of disciplinary proceedings in this Court." (Citations omitted).

*Id.* at 202, 528 A.2d at 897. To demand that the charges against an attorney remain fixed from the moment an Inquiry Panel is convened would defeat the investigatory purpose of the Inquiry Panel and Review Board scheme. Therefore, we overrule Goldsborough's exceptions with respect to the violations found by the Inquiry Panel and the Review Board.

■ Goldsborough's second contention is that it was improper for Bar Counsel to charge in the petition a number of Rule violations not specifically found by the Review Board. Therefore, he excepts to Judge Simpson's finding of violations based on those charges. He bases his objection on Maryland Rule BV9.a., which provides that charges against an attorney "shall be filed by the Bar Counsel acting at the direction of the Review Board."

We have examined the Review Board's report and recommendation. The Review Board adopted the Inquiry Panel's findings of fact *in toto*. The Review Board separately found, as did the Inquiry Panel, that Goldsborough's communications to Bar Counsel and his testimony before the Inquiry Panel were "deliberately untruthful." Based on Goldsborough's conduct, the Review Board found he had violated Rules 8.1(a) and 8.1(b), as well as Rules 8.4(d) and DR 1–102(A)(5), and concluded "that charges should be filed against the Respondent." Bar Counsel filed those charges found by the Review Board and, based on the conduct found by both the Inquiry Panel and Review Board, also charged Goldsborough with violations of Rule 8.4(a), DR 1–102(A)(1), and DR 1–102(A)(6). It is the filing of these latter charges to which Goldsborough objects.

We find no merit to Goldsborough's objection. This Court considered a comparable situation in *Attorney Grievance Comm'n v. Hamby*, 322 Md. 606, 589 A.2d 53 (1991). In that case, the Review Board found that Hamby had violated Rule 8.4(b), making it professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." The Review Board instructed Bar Counsel to file disciplinary charges in this Court. Bar Counsel not only charged Hamby with violating Rule 8.4(b), but also Rule 8.4(d), prohibiting "conduct prejudicial to the administration of justice." The judge to whom we assigned the matter for a hearing found that Hamby had violated both Rules. Hamby excepted to the petition's charge of Rule 8.4(d) and the hearing judge's finding that he violated that

Rule, because the Review Board did not explicitly direct Bar Counsel to charge him with a Rule 8.4(d) violation. The Court held that Rule BV9.a. had not been violated because the Rule 8.4(d) charge was "plainly related" to the Rule 8.4(b) charge and was therefore "within the authority vested in Bar Counsel under the Rule." *Id.* at 611, 589 A.2d at 56.

As in *Hamby*, the three charges to which Goldsborough objects in the instant case are plainly related to other violations found by the Review Board. DR 1–102(A)(6) proscribes an attorney's conduct that "adversely reflects on his fitness to practice law." DR 1–102(A)(1) and Rule 8.4(a) are the previous and current versions of the same rule, prohibiting an attorney from violating (or attempting to violate) the Rules of Professional Conduct. As more general catch-all Rules, these Rules are closely related to the other more specific violations found by the Review Board. Moreover, they stem from the identical conduct which the Review Board found to have occurred, and upon which the Board based its findings. Accordingly, their charging was within the authority vested in Bar Counsel under Rule BV9.a. We therefore overrule Goldsborough's exception.

In sum, Goldsborough was afforded notice and an opportunity to defend himself in a full and fair hearing following the institution of disciplinary proceedings in this Court. Before that hearing, he was fully apprised of the charges against him. His contentions asserting a denial of due process are without merit.

## B.

Goldsborough next excepts to Judge Simpson's finding of fact that there was "clear and convincing evidence" that he was "deliberately untruthful" in his testimony before the Inquiry Panel and the circuit court. He suggests that there was only a conflict in testimony between himself and each of the three women who testified, and that a court's refusal to believe a respondent's evidence does not, of itself, mean

that a witness is being "deliberately untruthful." This may be correct as a general rule, but in this case the hearing judge chose to make an additional finding that, with respect to these incidents, Goldsborough was deliberately untruthful. It is the essence of the fact-finding function that a trial judge clearly " 'may elect to pick and choose which evidence [or story] to rely upon.' " *Powell*, 328 Md. at 292, 614 A.2d at 110 (quoting *Attorney Grievance Comm'n v. Nothstein*, 300 Md. 667, 684, 480 A.2d 807, 816 (1984)). A judge may also decide that the evidence supports an additional finding that a witness was deliberately untruthful. As we have noted, we regard a hearing judge's findings of fact in attorney grievance matters as *prima facie* correct. We will not disturb them unless they are clearly erroneous, "giving due regard to the trial court's opportunity to assess the credibility of the witnesses." *Powell*, 328 Md. at 287–88, 614 A.2d at 108; *Bakas*, 323 Md. at 402, 593 A.2d at 1091. In light of the substantial evidence presented at the hearing, and giving appropriate deference to the hearing judge, we cannot say that Judge Simpson was clearly erroneous when he found Goldsborough was deliberately untruthful in his denials. Therefore, we overrule this exception.

## C.

Goldsborough next invokes the doctrine of laches in an attempt to convince us to "disregard" at least the Sweitzer and Porter incidents, which occurred in the late 1970s and 1984 respectively. This Court has previously expressed doubt about the applicability of the laches defense in attorney grievance proceedings. *Attorney Grievance Comm'n v. Engerman*, 289 Md. 330, 346, 424 A.2d 362, 370 (1981); *Anne Arundel Bar Ass'n v. Collins*, 272 Md. 578, 583, 325 A.2d 724, 728 (1974). This doubt springs from our concern for the underlying purpose of the Attorney Grievance process. As the Court has said:

" 'It ought to be made clear ... that the primary purpose of professional disciplinary proceedings is to protect the

public. The punishment of an offending member of the profession is indeed a serious matter, but it is incidental to the protection of the public. If the conduct of a member of the Bar disqualifies him from the practice of law, it would not be in the public interest to dismiss the disciplinary proceedings for no reason other than the Bar's failure to prosecute them with the proper dispatch.' "

*Engerman*, 289 Md. at 346, 424 A.2d at 370 (quoting *In re Weinstein*, 254 Or. 392, 459 P.2d 548, 549 (1969), *cert. denied*, 398 U.S. 903, 90 S.Ct. 1689, 26 L.Ed.2d 61 (1970)). The issue in *Engerman* and *Collins* was the disciplinary authorities' delay in pursuing action against an attorney once a complaint was brought, rather than a complainant's delay in bringing the complaint. Nonetheless, the Court's prior comments are especially applicable to this case. While we encourage and expect members of the public to promptly pursue attorney grievance actions when they are warranted, the mere failure of a complainant to promptly file a complaint should not necessarily foreclose disciplinary action against the attorney. In this case, to the extent that the investigation sparked by the complaint revealed a pattern of conduct stretching from Catharine Sweitzer's experience in the late 1970s to Sandy Schisler's as late as 1987, we believe it was appropriate to pursue both an investigation and the filing of disciplinary charges.[5]

Goldsborough also rests his laches argument upon *Attorney Grievance Comm'n v. Howard*, 282 Md. 515, 385 A.2d

---

**5.** At the hearing, Sweitzer explained her delay in bringing the complaint. At first, she felt her concerns would be satisfactorily addressed in a lawsuit she brought in 1983 against Goldsborough's firm for negligently handling her personal injury suit. The suit was settled in 1985, and she believed that "seeing it in writing or hearing about it that Mr. Goldsborough would think about the ramifications of his behavior and that they would stop." In 1989, when she returned to the Eastern Shore after living in New York for a number of years, she learned from one of Goldsborough's former associates that Goldsborough's behavior had continued. At that time, she decided to file a complaint because "I just felt that all this time had gone by, and it was continuing, I felt an obligation to do this."

1191 (1978), in which this Court adopted the Attorney Griev-
ance Commission's recommendation of a reprimand over
suspension or disbarment because "much water ha[d] gone
over the dam" since the violations complained of had oc-
curred. *Id.* at 523, 385 A.2d at 1196. This reliance is
misplaced, since *Howard* addressed the passage of time
only as a mitigating circumstance affecting the Court's
sanction. *Howard* did not suggest that the passage of time
should in any way affect whether the violation itself should
be found, and it is therefore inapplicable.

## D.

■ Next, Goldsborough raises a constitutional challenge
to both Rule 8.4(d) and its application to this case. Rule
8.4(d) states that "[i]t is professional misconduct for a
lawyer to ... engage in conduct that is prejudicial to the
administration of justice," and Goldsborough initially ar-
gues that the Rule is overbroad and vague. We considered
and rejected this argument in *Attorney Grievance Comm'n
v. Alison,* 317 Md. 523, 538–39, 565 A.2d 660, 667–68 (1989),
where we noted that the proscription is sufficiently definite
to pass constitutional muster. The Rule " 'applies only to
lawyers, who are professionals and have the benefit of
guidance provided by case law, court rules and the "lore of
the profession." ' " *Id.* at 538; 565 A.2d at 667 (citation
omitted) (quoting *Howell v. State Bar of Texas,* 843 F.2d
205, 208 (5th Cir.1988) and citing *In re Snyder,* 472 U.S.
634, 645, 105 S.Ct. 2874, 2881, 86 L.Ed.2d 504, 513 (1985)).

■ Goldsborough's second constitutional argument,
that Rule 8.4(d) is unconstitutional as applied in this case, is
equally unpersuasive. He argues that Rule 8.4(d) can only
be read to govern conduct related to "the court process,"
and that prior application of the Rule failed to put him on
notice that it could be applied to conduct not "related to
judicial proceedings." He could not be more incorrect.
Rule 8.4(d) and its substantially identical predecessor, DR
1–102(A)(5), have often been applied to an attorney's con-

duct outside of the judicial process. *See, e.g., Hamby,* 322 Md. 606, 589 A.2d 53 (attorney received indefinite suspension under Rule 8.4(d) for criminal involvement with controlled dangerous substances); *Attorney Grievance Comm'n v. Ezrin,* 312 Md. 603, 541 A.2d 966 (1988) (attorney disbarred under DR 1–102(A)(3), (4), (5), (6) for conversion of partnership funds); *see also Maryland State Bar Ass'n v. Agnew,* 271 Md. 543, 318 A.2d 811 (1974) (federal income tax evasion constitutes conduct "prejudicial to the administration of justice"). It strains credulity to say that, merely because this Court had never previously addressed similar circumstances, an attorney with Goldsborough's experience was not "on notice" that the conduct alleged by Bar Counsel could violate the Rules of Professional Conduct. We overrule these exceptions.

### E.

In a related argument, Goldsborough contends that whether Rule 8.4(d) is constitutional or not, his conduct is simply not proscribed by the Rule. The Comment to Rule 8.4 of the Maryland Rules of Professional Conduct, he notes, provides that "[a]lthough a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics *relevant to law practice.*" (Goldsborough's emphasis). We can only surmise that Goldsborough suggests we should view the nonconsensual kissing of clients and spanking of clients and employees as not "relevant to law practice." We do not agree. Goldsborough's actions, particularly with respect to his clients Catharine Sweitzer and Peggy Porter, are directly relevant to law practice. We need not expound on the centrality of the attorney-client relationship to say that when an attorney compromises the attorney-client relationship as Goldsborough did in this case, such action is indeed "relevant to law practice."

Goldsborough also relies on the Comment to the American Bar Association's Annotated Model Rules, which states

that "[i]n most cases ... violations of Rule 8.4(d) involve misconduct during litigation." The Comment's language itself indicates that at least some violations occur outside the litigation context. It cites quite a few such cases. *See, e.g., In re Wood,* 489 N.E.2d 1189 (Ind.1986) (lawyer offered to reduce legal fees if client would engage in sex); *In re Rudawski,* 407 N.W.2d 683 (Minn.1987) (lawyer notarized a forged signature on articles of incorporation without knowing whether the signature was genuine). We overrule Goldsborough's exception to the applicability of Rule 8.4(d).

## III.  *Bar Counsel's Exceptions*

Bar Counsel raises only one exception to Judge Simpson's findings of fact and conclusions of law. In its petition for disciplinary action, the Commission charged Goldsborough with violating Rule 8.4(c), which proscribes attorney conduct "involving dishonesty, fraud, deceit or misrepresentation." Bar Counsel contends that certain of the trial judge's findings of fact necessitated a finding that Goldsborough violated Rule 8.4(c).

First, Bar Counsel focuses on Judge Simpson's findings that (1) Goldsborough's written responses to Bar Counsel contained false statements, and (2) his testimony before the Inquiry Panel was "deliberately untruthful." Either finding, contends Bar Counsel, necessitated a finding of a Rule 8.4(c) violation. Both the Inquiry Panel and Judge Simpson found that this behavior violated Rule 8.1, which provides:

> "An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
> (a) knowingly make a false statement of material fact; or
> (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter...."

Indeed, such dishonesty before disciplinary authorities could fall under both the narrow proscription of this Rule as

well as the broader proscription of Rule 8.4(c), which provides:

"It is professional misconduct for a lawyer to:

\* \* \* \* \* \*

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

Judge Simpson elected to find that Goldsborough's conduct before the disciplinary authorities violated the more specific Rule 8.1. There was no need for the judge to make a further finding that this same conduct also violated the more general Rule 8.4(c) and, accordingly, we overrule this exception. *Cf. Attorney Grievance Comm'n v. Protokowicz*, 329 Md. 252, 258 n. 2, 619 A.2d 100, 103 n. 2 (1993).

▪▪▪▪ Bar Counsel also contends that Judge Simpson's finding that Goldsborough was "deliberately untruthful" in his testimony before the circuit court necessitated a finding that he violated Rule 8.4(c). While Goldsborough's conduct before the circuit court might be relevant in determining an appropriate sanction,[6] it does not permit a separate finding of a Rule 8.4(c) violation. The charges brought against Goldsborough were based on his pattern of conduct occurring *before* the petition for disciplinary action was filed in this Court. Due process considerations dictate that attorneys are entitled to notice of the charges against them when disciplinary proceedings begin. *Ruffalo*, 390 U.S. at 550–51, 88 S.Ct. at 1226, 20 L.Ed.2d at 122. While the charges are not necessarily fixed until a petition is docketed in this Court, once the petition is docketed, the charges become fixed. The existing charges cannot be expanded to include an attorney's post-charge conduct during the circuit court hearing itself. Judge Simpson's findings regarding Goldsborough's untruthfulness before the circuit court might serve as the basis for subsequent formal charges, but

---

6. An analogy can be made to *United States v. Grayson*, 438 U.S. 41, 55, 98 S.Ct. 2610, 2618, 57 L.Ed.2d 582, 592 (1978), in which the Court held that a sentencing judge may consider a defendant's false testimony during trial in deciding upon the appropriate sentence.

only after Goldsborough is provided adequate notice. Judge Simpson was correct in not finding a violation of Rule 8.4(c) based on Goldsborough's post-charge deliberate untruthfulness at the circuit court hearing. We therefore overrule Bar Counsel's exception.

### IV. *Sanction*

Having addressed the parties' exceptions, we turn to the difficult task of imposing an appropriate sanction for Goldsborough's violations of DR–102(A)(1), (5) & (6), Rule 8.1, and Rules 8.4(a) & (d). We cannot proceed without first noting Goldsborough's suggestion that the media attention paid to these proceedings, having already "ruined" his reputation, should mitigate the sanction. Media attention, however embarrassing or humiliating to the attorney, is no substitute for the responsibility of this Court to enforce the Rules of Professional Conduct. Our role in these proceedings, unpleasant and difficult as it may sometimes be, is one of utmost importance, and we will not shirk it or delegate it · to the media or public opinion.

In determining the appropriate sanction in this case, we believe there are three important factors. The first, quite obviously, is Goldsborough's behavior itself. The second is Goldsborough's continuing unwillingness to acknowledge that he has any behavioral problem. Finally, there is the mitigating factor of Goldsborough's demonstrated abilities as a practitioner of law.

Undeniably, Mr. Goldsborough has made significant contributions to both his community and his profession. He has practiced law in Maryland for forty-two years. He has been an active member of the Maryland State Bar Association, where he has held a number of leadership positions. He chaired the State Bar's Litigation Section and served as an At–Large Member of the Bar Association's Committee on Judicial Appointments. He also served as chairperson of the Task Force on the creation, *vel non,* of a southern division of the United States District Court for the District of Maryland. Mr. Goldsborough received his law degree

from the George Washington University, where he was awarded membership in The Order of the Coif for his academic achievements and was an editor of the law review. From 1957 to 1972, he taught law at George Washington. Mr. Goldsborough was graduated from the United States Military Academy at West Point. He served in the United States Air Force, was awarded the Bronze Star during the Korean War, and was honorably discharged as a captain.

It is most regrettable that, despite his many significant professional accomplishments, Goldsborough clearly has a serious problem which he cannot or will not acknowledge, let alone control. His abusive conduct toward Catharine Sweitzer, Peggy Porter, and Sandy Schisler is unacceptable under any standard; it certainly violates the rigorous standards we impose upon members of the Bar. A psychiatrist who examined Goldsborough characterized him as an "anachronism," as if this were somehow an exoneration. If the psychiatrist meant to suggest that Goldsborough's behavior might once have been acceptable, and we doubt that it ever was, we are absolutely certain that it is unacceptable now. An attorney of Goldsborough's experience and capabilities should reasonably be expected to know that spanking and kissing one's clients and spanking one's secretary will not be tolerated. We are also disturbed by Goldsborough's distinction between a "spanking" and a "pat," as if the issue were how much physical pain was caused to his victims. Neither the complainants nor Bar Counsel have ever suggested that the harm in question was actual physical pain; the harm in question was emotional, psychological, and social, and we remain troubled by Goldsborough's distinction without a difference.

Goldsborough's conduct exemplifies the arrogance that so frequently underlies instances of sexual harassment and abuse. Unfortunately, the legal profession is not yet entirely free of such arrogance or such behavior.[7] The courts

---

7. In Maryland, the legal community has taken some steps in the right direction. A Special Joint Committee on Gender Bias in the Courts,

and the bar must be aware of our obligation to keep the legal profession free of sexual harassment. Since attorneys are its officers, this Court has the duty "to insist upon the maintenance of the integrity of the bar and to prevent the transgressions of an individual lawyer from bringing its image into disrepute." *Agnew,* 271 Md. at 549, 318 A.2d at 814. Any sanction we impose also protects the public interest because it demonstrates to members of the legal profession the type of conduct that will not be tolerated. *Attorney Grievance Comm'n v. Kerpelman,* 288 Md. 341, 382, 420 A.2d 940, 959 (1980), *cert. denied,* 450 U.S. 970, 101 S.Ct. 1492, 67 L.Ed.2d 621 (1981). We also note that, while the purpose of disciplinary proceedings is to protect the public rather than punish the erring attorney, "concepts of general and specific deterrence are consistent with that primary goal." *Protokowicz,* 329 Md. at 262–63, 619 A.2d at 105; *Attorney Grievance Comm'n v. Owrutsky,* 322 Md. 334, 355, 587 A.2d 511, 521 (1991); *Alison,* 317 Md. at 540–41, 565 A.2d at 668.

While sexual harassment in any context is patently unacceptable, sexual harassment by an attorney of a client is especially deserving of condemnation. A divorce client mistreated by her spouse or a personal injury client recovering from severe injuries relies on her attorney to act solely in her best interest in assessing options and charting a legal course. The attorney-client relationship is based on trust, with the client necessarily placing total trust in the attorney and the attorney pledging to act in the client's best interest. Goldsborough, by his conduct, failed to demonstrate his recognition of, and respect for, his clients' trust. Peggy

appointed by the Chief Judge of this Court and the President of the State Bar Association, studied gender issues in the judicial system for two years and issued its findings in May 1989. *See Report of the Special Joint Committee on Gender Bias in the Courts* (May 1989). A Select Committee on Gender Equality was formed to begin addressing the Joint Committee's recommendations, and has issued three reports to date. See *Report of the Select Committee on Gender Equality of the Maryland Judiciary and the Maryland State Bar Association* (October 1992) for the most recent of these reports.

Porter became so uncomfortable with Goldsborough that she felt compelled to find another attorney. Catharine Sweitzer testified that, as time went on, she had increasing concerns about trusting Goldsborough. She testified that she was "thoroughly disgusted, frightened, confused. I couldn't understand what was happening or why. I just made it a point not to put myself in a position where I was alone with him again." She said that she "tried to make sure that the door was open or that I was not alone." We can think of few circumstances as fundamentally antithetical to the attorney-client relationship as a client so untrusting of her attorney that she is afraid to be alone with him. When Goldsborough chose to spank Catharine Sweitzer and kiss Peggy Porter, he abused the power that accompanied his license to practice law. When he gratified his psychological or sexual need at his clients' expense, he breached the trust indispensable to the attorney-client relationship. These acts, combined with Goldsborough's exploitative and abusive behavior toward a secretary in his law office, harmed not only his victims, but also the profession and the entire judicial system.

When we fashion an appropriate sanction, we consider any underlying causes of an attorney's misconduct and the prospects for rehabilitation. We are not unmindful of the benefits of returning a rehabilitated attorney to the productive practice of law. Thus, in determining the severity of the sanction, we consider the totality of the facts and circumstances of each case. *Attorney Grievance Comm'n v. Howard*, 299 Md. 731, 736, 475 A.2d 466, 468 (1984); *Maryland Rules of Professional Conduct*, Scope at 503 (1993). When an attorney's behavior is caused by alcoholism, drug addiction, or a mental disorder beyond the individual's control, we have often imposed an indefinite suspension to allow the attorney an opportunity to receive help. *See, e.g., Attorney Grievance Comm'n v. Reid*, 308 Md. 646, 650–51, 521 A.2d 743, 745 (1987); *Attorney Grievance Comm'n v. Willemain*, 305 Md. 665, 679–80, 506 A.2d 245, 252–53 (1986).

In this case, Bar Counsel recommends disbarment, partly because of the serious charges, but largely because of what it perceives as Goldsborough's unrepentant denial of his conduct. The fact that Goldsborough has refused to offer any explanation, instead denying that all but a single incident ever occurred, certainly complicates our choice of sanction. If Goldsborough is suffering from a serious but treatable disorder, then, in light of his long and otherwise exemplary professional career, we could be doing a disservice by forever barring him from returning to the practice of law. Because of his demonstrated legal ability and contributions to the profession, we believe the better course is to suspend him indefinitely from the practice of law so that he may take whatever time and whatever steps are necessary to identify and address his underlying problems. Although it may be late in his career, we hope that the possibility of being reinstated will motivate him to aggressively seek appropriate help.

Without assurance that similar incidents will not be repeated, we do not believe Goldsborough should be allowed to continue practicing law in this State. Therefore, he shall be indefinitely suspended from the practice of law, with the right to apply for reinstatement no sooner than two years from the date of this opinion, and only when he is able to persuade this Court that the conduct which necessitated his suspension will never be repeated.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT PURSUANT TO RULE BV15.c. FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE PETITIONER.

ROBERT M. BELL, Judge, dissenting.

Among the disciplinary rules the hearing judge found that George J. Goldsborough, Jr., the respondent, violated was Rule 8.1, prohibiting a lawyer, in connection with a disciplinary action, from knowingly making a false statement of material fact. The bases for finding the violation were representations the respondent made in correspon-

dence with Bar Counsel and his testimony before the inquiry panel. In his correspondence the respondent denied that he spanked two of the complaining witnesses as they had alleged.[1] Testifying before the Inquiry Panel, not only did he deny the petition's allegations, but he specifically branded the testimony of the complaining witnesses as untrue. As he was permitted to do, the hearing judge accepted the testimony of the complaining witnesses and rejected the respondent's. Thus, the hearing judge found that the respondent engaged in conduct prejudicial to the administration of justice, *see* DR 1–102(A)(5); Rule 8.4 of the Rules of Professional Conduct, or which adversely reflects on his fitness to practice law. *See* DR 1–102(A)(6). In addition, however, the hearing judge found that the respondent's testimony and his representations in the correspondence with Bar Counsel were "deliberately untruthful." The only evidence upon which the latter finding was based was the testimony of the complaining witnesses, which the hearing judge credited, and the respondent's denials, which he rejected.

The respondent excepted to the hearing judge's finding that there was "clear and convincing evidence" that he was deliberately untruthful.[2] Overruling the exception, the ma-

---

**1.** The respondent also denied the allegations that two partnership corporations of which he had been a member had been dissolved as a result of his unethical behavior. While the hearing judge said that his response was "anything but candid," he acknowledged that, since the dissolution involved professional associations, it was technically correct. It cannot be assumed that the violation was premised on that representation.

As to the Schisler allegations, Bar Counsel inquired whether the respondent had "subjected [her] to regular spankings that continued throughout the course of her employment." The respondent's denial was that she had not been "subjected 'to anything,' including specifically, 'regular spankings.'" Although he testified before the Inquiry Panel and the hearing judge that he spanked Schisler on one occasion, he consistently denied that there were regular spankings.

**2.** The hearing judge's findings of fact referred to the respondent's testimony before both the Inquiry Panel and the hearing judge. In his conclusions of law, however, the hearing judge focused only on "[r]espondent's misrepresentations as set forth in his letters of June

jority acknowledges that, as a general rule, "only a conflict in testimony between [the respondent] and each of the three women who testified, and ... a court's refusal to believe a respondent's evidence does not, of itself, mean that a witness is being 'deliberately untruthful.'" [Op. at 355]. It is persuaded, however, that the additional finding of "deliberate untruthfulness" was not clearly erroneous. Notwithstanding that it was based on the same evidence as proved the substantive offenses, the majority points out, it is up to the hearing judge to decide what to make of the evidence before him. Pointing then to "the substantial evidence presented at the hearing", [Op. at 356], and giving appropriate deference to the hearing judge's finding, the majority concludes that the respondent violated Rule 8.1. *Id.* We are never told just precisely why, or how, the evidence is either substantial on the Rule 8.1 issue or supports the additional "deliberate untruthfulness" finding.

I agree that a hearing judge is free to pick and choose, from among the evidence presented, that which he or she will credit, accepting some and discarding some, until the factual conflict has been resolved. *See Attorney Grievance Commission v. Powell*, 328 Md. 276, 292, 614 A.2d 102, 110 (1992). I also agree that judging the credibility of witnesses is a matter peculiarly within the province of the hearing judge and that his findings in that regard are entitled to appropriate deference. I, therefore, agree that the finding that the respondent committed the acts the witnesses alleged and testified to, is not clearly erroneous. Their testimony provides the substantial evidence of those acts.

I do not agree, on the other hand, that this record contains substantial evidence that the respondent was deliberately untruthful. As I indicated earlier, the only evidence

---

22, 1990, and January 2, 1991, to Assistant Bar Counsel and his false testimony before the Inquiry Panel, on July 8, 1991." Therefore, it is clear that the hearing judge's finding of a violation of Rule 8.1 was not premised on the respondent's testimony before him.

bearing on the issue was the conflicting testimony of the witnesses and the respondent. No evidence bearing upon the respondent's state of mind and, in particular, his motivation for denying the allegations was ever presented.

Permitting the joinder of substantive charges and perjury-like charges, premised only on the respondent's denial of the substantive charges is highly prejudicial and creates a dangerous precedent. A person acts deliberately whenever that person *elects*, voluntarily, to testify at a hearing or to respond to a complaint made against him or her. It makes no difference whether that to which the person testifies is consistent with, or contradictory to, the complaint or other testimony or evidence in the case. When the evidence is in dispute, it is the fact finder's call as to which side is being truthful. Its resolution of the credibility issue may lead, and, I suggest, most often does, in fact, lead,[3] inexorably, to the conclusion that the side disbelieved was deliberately untruthful and, conversely, that the other side was deliberately truthful. Thus, when it believes the complaining witness, a trial court's single act of resolving credibility may, and often does, perform double duty—it determines that the respondent or defendant committed the charged offenses and, necessarily, *albeit sub silentio*, affirmatively labels that party a perjurer.[4] When only the substantive

---

**3.** It is by no means unusual for a trial judge to take account, in sentencing, of his or her conclusion that a defendant who testified that he or she did not commit the charges of which he or she was convicted, lied and/or refused to accept responsibility for his or her conduct. The only explanation for that conclusion in most of those cases is that the judge believed the State's witnesses and accepted its evidence, while disbelieving and rejecting the defendant's. To be sure, those cases are usually criminal cases in which the defendant elects to testify at trial, but, rather than refuting the point, that fact actually buttresses it.

**4.** The prohibition against knowingly making a false statement of material fact is tantamount to committing perjury. *See Brown v. State,* 225 Md. 610, 616, 171 A.2d 456, 458 (1961) (quoting Wharton, *Criminal Law,* § 1511 (12th ed. 1932)); *State v. Mercer,* 101 Md. 535, 538, 61 A. 220, 221 (1905); *State v. Floto,* 81 Md. 600, 601, 32 A. 315

offense is charged, the latter conclusion often does not receive voice. In such a case, and in those, such as here, in which the hearing judge has no responsibility for sanctioning the respondent, the court will have no occasion to act on that conclusion.

Where, however, again, as in this case, in addition to the substantive offenses, the respondent is charged with knowingly making a false statement of material fact because he denied the complaint's allegations, the court's attention necessarily is directed to both the substantive charge and the corollary perjury-like charge. The latter charge likely may all but guarantee a like finding, whenever the respondent is found to have committed the charged substantive offense.[5] And once it is held that it is permissible to charge and convict a respondent for a perjury-like offense on nothing but conflicting evidence, where the decisive factor is the credibility determination, such charges will be brought, not on the rare occasion, but in every case. Indeed, Bar Counsel might even feel obliged to file a corollary perjury-like charge every time a respondent denies committing the substantive charge. Of course, when it becomes generally known that such charges are permitted in attorney discipline cases, it won't be long before they will be filed in criminal cases whenever the defendant makes an exculpatory statement or denies the charges after electing to testify before the grand jury. It may thus become common place that, whenever a respondent or defendant denies the allegations of a complaint or makes an exculpatory statement in response to allegations in a charging document, either two charges will be filed for each allegation, or

(1895). *See also* 4 Charles E. Torcia, *Wharton's Criminal Law,* § 601 (14th ed. 1981).

5. I am aware that that was not the case in *Atty. Griev. Com. v. Protokowicz,* 329 Md. 252, 260–62, 619 A.2d 100, 104–05 (1993). There, the hearing judge specifically rejected the invitation, offered by Bar Counsel, to find that Protokowicz knowingly lied about how the complaining witness's cat was microwaved. Notwithstanding, the danger that such a finding will be made automatically still exists.

an additional charge for either knowingly making a false statement of material fact or perjury will be brought.

There is another reason not to permit perjury-like charges to be tried in the same proceeding as the substantive charges. In *Brown v. State*, 225 Md. 610, 616, 171 A.2d 456, 458 (1961), quoting Wharton, *Criminal Law*, § 1511 (12th ed. 1932), we defined perjury as follows:

The offense consists in swearing falsely and corruptly, without probable cause of belief; not in swearing rationally or inconsiderately, according to belief. The false oath, if taken from inadvertence or mistake, cannot amount to voluntary or corrupt perjury.... That the oath is wilful and corrupt must not only be charged in the indictment, but must be supported on trial. An oath is wilful when taken with deliberation, and not through surprise or confusion, or a bona fide mistake as to the facts, in which latter cases perjury does not lie.

*See also State v. Mercer*, 101 Md. 535, 538, 61 A. 220, 221 (1905); *State v. Floto*, 81 Md. 600, 601, 32 A. 315 (1895); 4 Charles E. Torcia, *Wharton's Criminal Law*, § 601 (14th ed. 1981). As this definition of perjury reflects, the gravamen of the offense is intentional lying. The same is true of a Rule 8.1 violation, the respondent must have intentionally lied to be in violation of that rule. Where the evidence conflicts on the question, there is no basis for concluding that the respondent lied, intentionally or otherwise, until the trier of fact has first resolved the credibility issue. Certainly, the fact that more witnesses are lined up on one side or the other is not dispositive. Furthermore, until the substantive charges are resolved, the focus will be on determining whether the respondent committed them, not on whether he or she is falsely or corruptly lying. Certainly, the record in this case does not reflect any attempt by Bar Counsel to establish that the respondent knowingly made a false statement. All the record reflects is that one side sought to prove that the respondent committed the acts alleged and the other sought to prove that he did not. In this case, the hearing judge simply inferred from his acceptance of the

complaining witnesses' testimony that the respondent's denials deliberately were untruthful. Once the substantive charges have been tried, it may then be appropriate to charge and, in a separate proceeding, prosecute the respondent for a Rule 8.1 violation. That would at least ensure that the proper focus is maintained.

To permit a respondent to be found guilty of a perjury-like charge, conviction of which necessarily presupposes, or, at least, exposes, the respondent to punishment for that offense, as well as for the substantive rule violation he or she denies committing, based only on conflicting evidence, and in the context of a hearing on the latter, places a significant cost on a respondent's decision affirmatively to defend him or herself.[6] Having been notified of a complaint lodged against him or her for alleged misconduct, a lawyer will have to consider, before answering it, whether to risk the consequences of doing so. Even when he or she believes the allegations are not well-founded, given this decision, he or she must seriously consider foregoing any option he or she may have to deny them, since the hearing judge's decision on credibility could very well result in the multiplication of the charges; not only may the substantive charges be sustained but so too could perjury-like charges.

Using the fact of contradictory evidence as the predicate for a perjury-like charge and its resolution as the basis for a conviction on that charge also impermissibly results in double punishment and is fundamentally unfair. When the

---

**6.** It may be argued that, a lawyer does not have a right to commit perjury; thus, he or she is not harmed by permitting separate punishment for the substantive charge and perjury. The argument continues that he or she may, rather than deny the allegations, simply put Bar Counsel to its proof. There is a real question as to whether a respondent actually has any alternative but to answer a request from Bar Counsel for information about a complaint. *See* Rule 8.1(b) ("An applicant ... shall not ... knowingly fail to respond to a lawful demand for information from an admission or disciplinary authority...."). That is, by no means, satisfactory. Moreover, it is mere fortuity under the circumstances where the credibility determination is dispositive of whether the lawyer's denial is found to be perjury or the gospel truth.

hearing judge resolved the credibility issue against the respondent, and in favor of the witnesses against him, he necessarily determined that the respondent engaged in conduct violative of the Rules of Professional Responsibility and, thereupon, may be sanctioned for that conduct to the fullest extent permitted by law. By using that same credibility determination to find a violation of another rule, the respondent was subjected to a separate, but potentially cumulative, sanction. Moreover, that violation is at least as serious, if not more so, than the charge which prompted the petition for disciplinary action, because it implicates a character trait, dishonesty, the existence of which undermines, if it is not inimical to, one's ability to practice law. This is in no way analogous to the situation in which the respondent's sentence is enhanced by reason of a defendant testifying falsely at trial. *See United States v. Grayson,* 438 U.S. 41, 55, 98 S.Ct. 2610, 2618, 57 L.Ed.2d 582, 592 (1978). *See also United States v. Dunnigan,* —— U.S. ——, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993). In the latter case, the question is what sentence, the outer limits of which are already fixed, should be imposed in respect of the conviction. In the former, however, there are two separate offenses, each subject to separate, and cumulative, punishment. Thus, far from enhancing a sentence, what actually occurs is that offenses are multiplied, which, as a practical matter, makes it more likely that a more severe sanction will be imposed.

Fundamental fairness demands that only the substantive charge, *i.e.* the charge reflecting the conduct about which the complaint was concerned and, hence, which prompted the filing of the petition, should be considered. As indicated, that charge subjects the petitioner to a significant sanction. To allow the perjury-like charge to be considered smacks of "piling on." Although not identical, the majority recognized the unfairness of "piling on" when it responded to the petitioner's exceptions to the hearing judge's refusal to find an 8.4 violation. In overruling Bar Counsel's exceptions to the hearing judge's refusal to find that Rule 8.4(c)

had been violated, *i.e.*, that the respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, based on the same conduct as formed the basis for the 8.1 violation, the majority suggested that, while the conduct might support both violations, there was no need to find a violation of another rule when the violation already found sufficiently covered the offense. [Op. at 362.]. Similarly, here, having determined that the respondent violated the substantive offense, there really is no basis, or need, for a further finding that his denial that he did so *i.e.*, his entering a defense, was deliberately untruthful. The hearing judge should have declined, as it did in the case of the charged Rule 8.4 violation, to find a Rule 8.1 violation.

Rather than order the respondent disbarred, the majority indefinitely suspends him with the right to apply for reinstatement in no sooner than two years, but then only when he is able to persuade the Court that the conduct it found that he committed will never be repeated. This disposition is curious given the majority's acceptance of the hearing judge's finding that the respondent deliberately chose to deny what he well knew to be a well-founded charge and when no mitigating circumstances, such as alcoholism, drug addiction, or a mental disorder beyond his control were found. Indeed, as to the latter, the respondent has not even contended that there were mitigating circumstances which would explain his conduct, adamantly maintaining, throughout these proceedings, that he simply did not do that with which he was accused. That being the case, it is difficult for me to understand how a finding that he is suffering from a serious, but treatable disorder (that appears to be the only possible predicate for the Court's disposition) is possible.

Moreover, because the respondent does not admit the conduct, I am puzzled as to how the respondent can aggressively seek help when he has indicated, emphatically, that he not only does not need help, but that he did not commit the acts alleged. Furthermore, an indefinite suspension, especially on the condition proposed by the majority, holds

out hope to the respondent that he may again practice law, but only if he is willing to engage in subterfuge and dishonesty, the latter of which was found by the hearing judge to be reprehensible enough to support an additional charge. By upholding that finding, I would have thought that the majority would have enhanced, rather than mitigate, the respondent's sanction.

Because I find the respondent's conduct reprehensible, the hearing judge's findings of fact concerning the respondent's commission of the substantive charges, unlike those pertaining to the Rule 8.1 violation, not being clearly erroneous, I would have suspended the respondent from the practice of law for two years. Assuming the Rule 8.1 violation finding was not clearly erroneous, disbarment, rather than indefinite suspension, would have been warranted.