No. 100,060

In the Matter of REBECCA L. PILSHAW, District Judge,
*Respondent.*
(186 P.3d 708)

Opinion filed June 27, 2008.

*Edward G. Collister, Jr.,* Commission Examiner, of Lawrence, argued the cause for the Commission on Judicial Qualifications.

*Steven M. Joseph,* of Joseph & Hollander, PA, Wichita, argued the cause for respondent, and *Rebecca L. Pilshaw,* respondent, argued the cause pro se.

*Per Curiam:* This is an original proceeding in discipline against the respondent, Rebecca L. Pilshaw, District Judge of Sedgwick County, Kansas. In a notice of formal proceedings before the Kansas Commission on Judicial Qualifications, the respondent was charged with violating the provisions of Canon 1 (2007 Kan. Ct. R. Annot. 621), Canon 2A (2007 Kan. Ct. R. Annot. 621), and Canon 3B(3) and (4) (2007 Kan. Ct. R. Annot. 624) of the Rules Relating to Judicial Conduct, as set forth in Rule 601A (2007 Kan. Ct. R. Annot. 617).

On January 31, 2008, a public hearing was held in Topeka, Kansas, before Panel A of the Commission on Judicial Qualifications, at which hearing Panel A heard evidence and made an independent determination as to whether violations of the Code of Judicial Conduct had occurred. The respondent appeared personally and through counsel, Stephen M. Joseph.

Following the public hearing, the Commission issued its final report, finding that there was clear and convincing evidence that the respondent's conduct violated Canons 2A and 3B(3) and (4) of the Code of Judicial Conduct. The Commission also found that there was not clear and convincing evidence that the respondent violated Canon 1. Based on its findings and conclusions, as more fully set forth below, the Commission recommends that the respondent be publicly censured.

The respondent filed her written response to the Commission's final report with the Clerk of the Appellate Courts, stating that she did not "wish to file exceptions to the findings of fact and conclusions of law" of the Commission but that she nevertheless "reserve[d] the right to address the Supreme Court with respect to disposition of the case."

## Commission's Findings of Fact

In its final report, the Commission concluded that the following facts were established by clear and convincing evidence:

"1. Respondent presided over the multi-count felony trial proceedings in Sedgwick County case number 03CR1565, *State v. Dewey Gaither* [see *State v. Gaither*, 283 Kan. 671, 682-83, 156 P.3d 602 (2007)].

"2. Thomas Weilert and Jennifer Hudson, Assistant Sedgwick County District Attorneys, appeared on behalf of the State of Kansas. Thomas Weilert was lead counsel, and Jennifer Hudson was second chair. Alice Osburn appeared as counsel for the defendant.

"3. Jury voir dire began on May 24, 2004, and continued into a second day.

"4. On May 24, 2004, the Respondent informally questioned forty-two jurors before Assistant District Attorney Weilert began his questioning.

"5. Four jurors had been excused for cause by late afternoon when Mr. Weilert asked the following question: 'Is there anybody who has come into contact with a law enforcement officer in their official capacity—who has deep feelings about the incident?'

"6. After referring to Hitler and the war, Juror #16 stated '. . . I'm completely against the police and the uniform . . . .'

"7. Mr. Weilert continued, 'If you were selected as a juror and police officers came in to testify, would you not believe anything they said because they're cops?'

"8. Juror #16 responded, 'I won't believe everything they say. That's for sure.'

"9. Juror #16 was excused for cause after further questioning by Respondent but was ordered to sit through the entire trial in lieu of jury service 'so you can get an objective view of how people—of how people do testify.'

"10. After Juror #16's dismissal, Respondent addressed the jury panel, saying, 'All right. Anybody else want to mess with me?'

"11. The replacement for Juror #16 indicated that she did not want to serve, explaining that she was a Jehovah's Witness and did not 'feel comfortable judging anyone.' She further stated that her personal feelings were 'if you're in here, you're guilty of something.'

"12. Respondent took over the questioning, pointing to inconsistencies in the juror's position. She concluded, '. . . I believe you don't want to do it [jury service]. I've got quite a few people that don't want to do it either. But you

have said the magic words, so you are released from your jury service. And I feel sorry for the next person that ends up going, because I am going to hit the roof, I think.'

"13. Juror #22 had indicated that he had a question but changed his mind about asking a question after this exchange.

"14. An off the record bench conference occurred between Respondent and the attorneys at Ms. Osburn's suggestion. Ms. Osburn advised Respondent that Respondent was yelling and that members of the jury panel were scared to answer questions.

"15. After the bench conference, Respondent addressed the jury panel, stating, 'No one should be compelled—feel compelled to say anything that's not true, because they're afraid I'm going to yell at them.'

"16. Respondent offered amnesty to the next two people who had negative things to say. Juror #22 asked his question.

"17. In releasing the jurors for the evening, Respondent stated, 'If I have been rude and mean today, I apologize very, very, very much so.'

"18. After the jury departed, Ms. Osburn, counsel for the defendant Gaither, indicated to Respondent that the questioning of Juror #16 and her replacement had a 'chilling effect' on the jury. Ms. Osburn stated, 'You yelled at the two jurors.'

"19. Respondent replied, 'You can absolutely say it, and I admit it. I yelled at those two jurors. I was mad at them.'

"20. Ms. Osburn moved for a mistrial which Respondent denied.

"21. On May 25, 2004, prior to resumption of proceedings, the attorneys met with Respondent in her chambers. The State joined defense counsel in renewing an oral request for mistrial. The request was denied.

"22. When the proceedings resumed in the courtroom, Respondent stated to the jury panel that she 'was pretty upset yesterday afternoon with two particular jurors, and it was obvious,' but she had decided that Juror #16 would not be required to sit through the trial.

"23. Respondent stated to the jury panel, 'If you feel too intimidated to answer the lawyers' questions honestly, raise your hand right now, and you've just got a free pass out of here, and I won't berate you. I won't be mad. I will be mad only at myself for having caused this environment that you would feel that way, so this is your opportunity. Anybody want to leave?' Two jurors left.

"24. At the hearing before Panel A on January 31, 2008, all counsel in the *Gaither* trial testified.

"25. It was established that all were experienced trial counsel at the time of the *Gaither* trial. Mr. Weilert had practiced law since 1977, having conducted an estimated 200 jury trials in Wichita. Ms. Hudson had practiced law since 1997 and had conducted between 50 and 60 jury trials. Ms. Osburn had practiced law since 1992 and had conducted an estimated 100 jury trials. All

had appeared in trials before Respondent on previous occasions and were familiar with her voice and manner of running the courtroom.

"26. Ms. Hudson testified at the hearing in this matter that 'Judge Pilshaw normally has a very loud booming voice, but in this instance it was not only elevated volume wise, but there was an angry tone to it, a biting tone.'

"27. Mr. Weilert testified that the Respondent became loud and made 'totally inappropriate comments.' He continued, 'I had never seen that kind of reaction before, and I have been in a lot of jury selections.' Mr. Weilert concluded that two members of the jury panel were 'berated' in front of the remaining jurors.

"28. Ms. Osburn testified that Respondent lost her temper during the jury selection."

## Commission's Conclusions of Law and Recommendation

Based on the above facts, the Commission unanimously concluded that the respondent's actions violated Canons 2A and 3B(3) and (4) of the Kansas Code of Judicial Conduct. See Supreme Court Rule 601A. The Commission found that there was not clear and convincing evidence that the respondent violated Canon 1 and dismissed that charge.

Canon 2A states: *"A Judge Shall Avoid Impropriety and the Appearance of Impropriety in All of the Judge's Activities,"* providing that "[a] judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." 2007 Kan. Ct. R. Annot. 621. The comments to this Canon explain that the "test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired." 2007 Kan. Ct. R. Annot. 622.

Canon 3B of the Code of Judicial Conduct, Rule 601A, provides in relevant part:

*"A Judge Shall Perform the Duties of Judicial Office Impartially and Diligently*

"B. Adjudicative Responsibilities.

. . . .

(3) A judge shall require order and decorum in proceedings before the judge.

(4) A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers and others with whom the judge deals in an official capacity, and shall require similar conduct of lawyers, and of staff, court officials and others subject to the judge's direction and control." 2007 Kan. Ct. R. Annot. 624.

The Commission explained:

"5. Based on the record of the jury voir dire and testimony of experienced trial counsel in this proceeding, the Panel concludes that Respondent did not act in a manner that promotes public confidence in the integrity and impartiality of the judiciary nor did she act in a patient, dignified, and courteous manner.
"6. Respondent lost her temper and engaged in emotional outbursts which led counsel for the State and counsel for the defense to unite in moving for a mistrial.
"7. Although the conduct in question occurred with only two prospective jurors out of many, judges are not permitted occasional outbursts as suggested by counsel for the Respondent in his closing argument."

Based on these conclusions, the Commission unanimously recommended that this court impose the discipline of public censure.

Analysis

The respondent did not file exceptions to the Commission's findings of fact and conclusions of law. Thus, the findings of fact and conclusions of law in the Commission's report are deemed admitted and conclusive. Supreme Court Rule 623(d) (2007 Kan. Ct. R. Annot. 660). We therefore find that the respondent violated Canons 2A and 3B(3) and (4) of the Code of Judicial Conduct based upon the clear and convincing evidence presented to the Commission and on the respondent's decision not to file exceptions to the Commission's findings and conclusions. In her letter to the Clerk of the Appellate Courts, however, the respondent indicated that she "reserve[d] the right to address the Supreme Court with respect to *disposition* of the case." (Emphasis added.)

During oral argument before this court, the respondent and her counsel raised two issues regarding the Commission's report: a claim relating to the language of the Commission's report and an argument offering an alternative disposition to the discipline recommended in this case. We discuss each of these issues in turn.

Counsel for the respondent first claimed that the conclusion in the Commission's report that "judges are not permitted occasional outbursts" is too broad, as instances may arise where judges must take some action—including raising one's voice—in order to preserve decorum in the courtroom. We initially note that because this issue relates not to the appropriate disposition of this case, but

rather to the propriety of the Commission's conclusions, it is not properly before us at this time. Supreme Court Rule 623(d) provides that any exceptions to the Commission's report must be filed within 20 days of the receipt of that report. (2007 Kan. Ct. R. Annot. 659.) The rule further states that "[a] hearing panel's findings of fact and conclusions of law shall be conclusive and may not be challenged by respondent unless exceptions have been timely filed." Supreme Court Rule 623(d) (2007 Kan. Ct. R. Annot. 660). The respondent specifically disclaimed any exception to the Commission's factual findings or legal conclusions in her letter to the Clerk of the Appellate Courts; counsel for the respondent may not now circumvent our rules to raise an argument regarding those conclusions.

We further note that even if we were to consider the claim raised by counsel during oral argument, that claim would be without merit. The hearing panel's conclusions of law are limited to its factual findings in a particular case. Although the statement at issue in this case is phrased in general terms, the Commission was not setting forth a new rule regarding judicial conduct to be applied prospectively in other cases. We conclude that the statement in the Commission's report was not improper when read in its intended context—an explanation for the Commission's conclusions that the respondent's behavior violated the Code of Judicial Conduct.

The respondent further argues that she should not be publicly censured for her actions in this case. She asked that any action taken be limited to an informal admonishment, claiming that she has suffered enough public scrutiny as a result of her conduct.

Supreme Court Rule 620 provides that once the Commission finds a violation of the Code of Judicial Conduct by clear and convincing evidence, the Commission "shall" take one of three actions: "(1) admonish the judge, (2) issue an order of cease and desist, or (3) recommend to the Supreme Court the discipline or compulsory retirement of the judge." The Rule further provides for three disciplinary options of public censure, suspension, and removal from office for judicial misconduct. (2007 Kan. Ct. R. Annot. 658). The panel unanimously recommended that the respondent be disciplined by public censure.

The conduct of the respondent was the subject of a motion for mistrial and a claim of error on appeal by the defendant in *State v. Gaither*, 283 Kan. 671, 682-83, 156 P.3d 602 (2007). We discussed the respondent's conduct and explained in that case:

"The judicial canons require a judge to perform the duties of the judicial office with impartiality. Canon 3 (2006 Kan. Ct. R. Annot. 572). The expectations for judicial conduct stated in Canon 3 have been summarized as follows in *State v. Miller*, 274 Kan. 113, 128, 49 P.3d 458 (2002):

" 'The judge should be the exemplar of dignity and impartiality, should exercise restraint over judicial conduct and utterances, should suppress personal predilections, and should control his or her temper and emotions. The judge should not permit any person in the courtroom to embroil him or her in conflict and should avoid conduct which tends to demean the proceedings or to undermine the judge's authority in the courtroom.' " 283 Kan. at 682.

Although we concluded in *Gaither* that the defendant's motion for mistrial was properly denied and that the respondent's later apology to the jury "purged the taint of the misconduct," preventing her behavior from being a reason for reversal of the defendant's conviction, her conduct amounted to a serious breach of ethics. 283 Kan. at 684.

The aim of judicial discipline is "the maintenance of the honor and dignity of the judiciary and the proper administration of justice rather than the punishment of the individual." *State ex rel. Comm'n on Judicial Qualifications v. Rome*, 229 Kan. 195, 206, 623 P.2d 1307 (1981). This principle directs the outcome in the respondent's case. The respondent's failure to control her temper and frustrations and her conduct toward potential members of the jury in open court greatly detracted from the honor and dignity of the judiciary. Her actions negatively impacted the proper administration of justice in a felony criminal case over which she presided. While we recognize that the Commission's recommendation is not binding on this court, see *In re Robertson*, 280 Kan. 266, 269, 120 P.3d 790 (2005); Supreme Court Rule 623(d) (2007 Kan. Ct. R. Annot. 659), our review of the entire record supports the Commission's recommendation that the appropriate discipline in the respondent's case is public censure.

IT IS THEREFORE ORDERED that Rebecca L. Pilshaw should be and she is hereby publicly censured by this court.

IT IS FURTHER ORDERED that this opinion be published in the official Kansas Reports and that the costs herein be assessed to the respondent.