No. 62,694

In The Matter of the Inquiry Relating to WILLIAM H. YANDELL, District Judge.

(772 P.2d 807)

Opinion filed April 14, 1989.

*Jack Focht*, of Focht, Hughey, Hund & Calvert, of Wichita, argued the cause and was on the brief for respondent.

*Edward G. Collister, Jr.*, of Lawrence, argued the cause and was on the brief for petitioner, Commission on Judicial Qualifications.

*Per Curiam*: This original proceeding was instituted before the Kansas Commission on Judicial Qualifications (Commission), to inquire into the conduct of the Hon. William H. Yandell, district judge of the 30th Judicial District. The notice of formal proceedings charged Judge Yandell in eight separate counts with various violations of the Code of Judicial Conduct, Supreme Court Rule 601 (1988 Kan. Ct. R. Annot. 277).

Chief Justice Miller and Justice Six recused themselves from serving in this case. The Hon. William M. Cook, district judge of the 29th Judicial District, and the Hon. Jean F. Shepherd, district judge of the 7th Judicial District, were assigned to serve with the remaining members of the Supreme Court pursuant to Article 3, § 6(f) of the Kansas Constitution.

The proceedings before the Commission were lengthy, as evidenced by a transcript of 338 pages, hundreds of pages of exhibits and pleadings, and numerous depositions. Testimony before the Commission included seven witnesses for the petitioner and six presented by Judge Yandell. In addition, at least four depositions were admitted in evidence, and Judge Yandell testified at length. The matter was exhaustively presented to the Commission by experienced trial counsel for both parties. The Commission found by clear and convincing evidence that Judge Yandell had violated various Canons of Judicial Conduct in all eight counts asserted by the petitioner. Although one member of

the Commission was unable to participate in the proceedings, eight members of the Commission were unanimous in recommending that Judge Yandell be removed from office.

William H. Yandell was appointed to the district court of the 30th Judicial District in 1982 and has served in that capacity since. At the time of his appointment, Judge Yandell was apparently in serious financial difficulty, which led eventually to most of the charges herein. The basic facts are not in dispute and will only be set forth as necessary in considering the various charges asserted before the Commission and the issues raised on appeal.

Respondent contends before this court that a judge should not be disciplined because of problems arising from financial difficulties and that removal from office is not warranted by the charges or the evidence. At the outset we will set forth the pertinent provisions of the Judicial Canons and then consider each count of the complaint.

The Commission found various violations of Canons 1, 2, and 5 of the Code of Judicial Conduct, which provide in relevant part:

### CANON 1
*"A Judge Should Uphold the Integrity and Independence*
*of the Judiciary*

". . . A judge should participate in establishing, maintaining and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved."

### CANON 2
*"A Judge Should Avoid Impropriety and the Appearance*
*of Impropriety in All His Activities*

"A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

### CANON 5
*" A Judge Should Regulate His Extrajudicial Activities*
*to Minimize the Risk of Conflict*
*with His Judicial Duties*

. . . .

"C. *Financial Activities.*

　　(1) A judge should refrain from financial and business dealings that tend to reflect adversely on his impartiality, interfere with the proper performance of his judicial duties, exploit his judicial position, or involve him in frequent transactions with lawyers or persons likely to come before the court on which he serves.

　　　　. . . .

　　(4) Neither a judge nor a member of his family residing in his household

should accept a gift, bequest, favor, or loan from anyone except as follows:

  . . . .

(b) a judge or a member of his family residing in his household may accept ordinary social hospitality; a gift, bequest, favor, or a loan from a relative; a wedding or engagement gift; a loan from a lending institution in its regular course of business on the same terms generally available to persons who are not judges; or a scholarship or fellowship awarded on the same terms applied to other applicants."

## COUNT I.

It was alleged that Judge Yandell violated Canons 1 and 2A by leaving the scene of a non-injury accident and by violating the terms of a previous cease and desist order issued by the Commission. In view of the allegations and findings relative to the cease and desist order, certain background information is required.

On October 20, 1982, Judge Yandell was arrested in Topeka and charged with driving while intoxicated in violation of K.S.A. 8-1567. He entered into a diversion agreement which was successfully completed, and the charges were ultimately dismissed. A cease and desist order was issued by the Commission on December 13, 1983, in which Judge Yandell agreed, *inter alia*, that he would not commit "any act or acts that could be found to violate the laws of the State of Kansas."

On April 11, 1985, Judge Yandell was driving his Volkswagen automobile in Wichita when he struck two highway signs in the vicinity of Kellogg and Hoover Streets. His car was damaged to the extent that it could not be driven and he proceeded on foot to the Canterbury Inn to seek assistance. He called the Harper County law enforcement center and asked the undersheriff on duty, Larry Stone, to investigate the collision. Stone replied that he could not do so because it was out of his jurisdiction, but that he would contact the Wichita police department. Judge Yandell then contacted his father-in-law in Wichita, who furnished him with an automobile. The judge then returned to his home in Harper. He did not return to the scene of the accident or contact Wichita authorities that night. He did contact the Wichita police department the next day and ultimately filed a police report with the department. He was charged with three violations of the ordinances of the City of Wichita and, following a plea bargain, pled guilty to one count of inattentive driving.

The Commission concluded:

"Respondent went out of his way to avoid complying with the rules relating to reporting an accident. He left his vehicle unattended. He did not leave any identification on the vehicle. He did not go back to the scene of the accident to aid the investigation. As a judge handling criminal cases, he had to know the sheriff's office in Harper County would not investigate an accident in Wichita. The conduct does not comply with the requirements of the law.

"K.S.A. 1987 Supp. 8-1605, provides that the driver of a vehicle having an accident with property, must leave identification and without necessary delay, notify the nearest office of the duly authorized authority. Respondent clearly did not do that. He not only violated the laws of the State of Kansas, but in addition, the cease and desist order resulting from an earlier proceeding.

"The respondent testified that he did not make any report because he was afraid that he would be asked to pass an alcohol breath test, even though he insisted he had not been drinking. Respondent testified that he believed that the breath test would show alcohol without any alcohol having been consumed. The commission finds this explanation incredible."

The Commission found that respondent's conduct violated Canons 1 and 2A of the Code of Judicial Conduct.

Respondent argues that the provisions of K.S.A. 1988 Supp. 8-1605 were substantially complied with and that the Wichita police department had all the necessary information required by the statute readily available to it. He contends that the purposes of the statute were served and that the entire issue could be categorized as *de minimis non curat lex.*

Respondent's argument lacks merit. K.S.A. 1988 Supp. 8-1605 imposes a mandatory duty on drivers involved in accidents resulting in property damage. Since January 1, 1985, violation of the statute constitutes a misdemeanor. Respondent's accident occurred on April 11, 1985. The respondent's failure to carry out the mandatory duty imposed by the statute "could be found to violate the laws of the State of Kansas," and, as such, violated the Commission's prior cease and desist order.

The issue in this proceeding is not whether respondent violated K.S.A. 1988 Supp. 8-1605 beyond a reasonable doubt, as he apparently contends, but whether the evidence before the Commission proved by clear and convincing evidence that respondent violated the Code of Judicial Conduct. See *State ex rel. Comm'n on Judicial Qualifications v. Rome,* 229 Kan. 195, 205, 623 P.2d 1307, *cert. denied* 454 U.S. 830, *reh. denied* 454 U.S. 1094 (1981). While we agree that this incident, standing alone, would not justify the severe sanction of removal from office, we concur with the Commission that the respondent's actions do constitute violations of Canons 1 and 2A.

## COUNTS II and III

Counts II and III will be considered together as they involve various financial transactions relating to the respondent's 1982 Volkswagen automobile. Respondent pledged the automobile as security for loans with Barber County Savings & Loan Association from April 1985 until the loans were paid in 1988. The creditor attempted to obtain the title to the vehicle so its lien could be shown thereon, but respondent failed to cooperate and never furnished the title. On July 10, 1987, the same vehicle was pledged as security for a loan from First National Bank of Anthony. The vehicle was sold in August 1987 without the knowledge or consent of Barber County Savings & Loan Association, which received no part of the proceeds of the sale.

The Commission found that respondent would not respond to valid requests from Barber County Savings & Loan Association for the automobile title; that he pledged the same vehicle as security for two different loans without advising either creditor of the other; that he violated the contractual and property rights of his secured creditor; and that even though the loan was ultimately paid, the conduct violated Canons 1 and 2A. We agree with the Commission.

## COUNTS IV through VIII

As the circumstances and facts surrounding these counts are similar and individual consideration of each count would be largely repetitious, the charges will be considered together.

These counts involved various financial dealings respondent had with several financial institutions, including Barber County Savings & Loan Association, First National Bank of Medicine Lodge, First National Bank of Kingman, Kingman Savings & Loan Association, and First National Bank of Attica. With the exception of Kingman Savings & Loan Association, respondent executed one or more notes to each of the institutions and he defaulted on all the loans. Respondent avoided telephone calls, stalled the various creditors, made false promises of payment, and generally ignored and evaded all attempts by the creditors to contact him. Several of the creditors had to obtain legal counsel and resort to legal proceedings to ultimately secure payment. Respondent had checking accounts with Kingman Savings & Loan Association and Barber County Savings & Loan Associa-

tion. He wrote at least 47 insufficient fund checks on the Barber County Savings & Loan Association account and at least 57 on the Kingman Savings & Loan Association account. Both accounts were closed by the creditors due to unsatisfactory experiences with the respondent.

While all of these problems were going on, respondent regularly heard contested cases involving these creditors and did not recuse himself. Respondent's testimony indicates he did not think it was necessary because he knew his financial dealings and problems with the litigants would not affect his decisions. He also did not see any serious problems associated with writing insufficient fund checks.

There was also testimony that various creditors had given the respondent favored treatment in their collection efforts and that they were reluctant to press for collection as fully as they might in other cases. However, we do not find any evidence that respondent openly used his judicial position to obtain preferential treatment in the securing of loans, although the creditors were certainly cognizant of his position.

The Commission found violations of the Code of Judicial Conduct in connection with each count. These violations included Canons 1, 2A, 5C(1), and 5C(4)(b). Respondent presented evidence of his financial problems and his attempts to meet his financial obligations. He candidly admitted he was greatly overextended and could not possibly meet all his monthly obligations. As he stated, he was forced to "rob Peter to pay Paul." He also appeared before the bench/bar committee of the 30th Judicial District and attempted to work out a solution to his problems with the help and assistance of members of the committee. He was ultimately successful in consolidating all his debts under one loan with First National Bank of Anthony, and all the earlier creditors were eventually paid in full.

Respondent argues that he should not be subject to discipline solely because he defaulted on his financial agreements. He contends that the inability of a judge to meet his financial obligations does not in itself amount to impropriety or the appearance of impropriety. However, respondent's conduct went far beyond mere inability to meet his financial obligations. He continually avoided his creditors, made false promises and statements to them, and conducted himself in a manner totally

inconsistent with the Code of Judicial Conduct and his obligations as a member of the judiciary. His conduct appears to reflect a total disregard for the judicial system and its processes. He does not exhibit any respect for his position, the laws he has sworn to uphold, or the contractual and legal rights of his creditors. His conduct displays a total lack of judicial temperament and understanding of the obligations of his position as a member of the judiciary.

Canon 5C deals specifically with a judge's financial activities and how they should be regulated to minimize the risk of conflict with his or her judicial duties. Canon 5C(1) provides:

"A judge should refrain from financial and business dealings that tend to reflect adversely on his impartiality, interfere with the proper performance of his judicial duties, exploit his judicial position, or involve him in frequent transactions with lawyers or persons likely to come before the court on which he serves."

Canon 5C(3) provides:

"A judge should manage his investments and other financial interests to minimize the number of cases in which he is disqualified. As soon as he can do so without serious financial detriment, he should divest himself of investments and other financial interests that might require frequent disqualification."

Canon 3C requires a judge to disqualify himself "in a proceeding in which his impartiality might reasonably be questioned . . . ." The commentary to Canon 5C reads in part:

"Canon 3 requires a judge to disqualify himself in any proceeding in which he has a financial interest, however small; Canon 5 requires a judge to refrain from engaging in business and from financial activities that might interfere with the impartial performance of his judicial duties. . . . A judge has the rights of an ordinary citizen, including the right to privacy of his financial affairs, except to the extent that limitations thereon are required to safeguard the proper performance of his duties."

All of the financial institutions involved in this case are located within the five counties making up the 30th Judicial District. Respondent's consistent failure to meet his financial obligations to those institutions caused him to be involved in "frequent transactions with lawyers or persons likely to come before the court on which he serves." Canon 5C(1). In addition, by borrowing from at least six different financial institutions within the district, respondent failed to manage his financial interests so as to minimize the number of cases in which he might be disqualified. Canon 5C(3).

Respondent's insufficient fund checks and loan defaults involved financial institutions located within the judicial district in which he holds judicial office. Such practices could not help but raise questions as to his impartiality. in legal proceedings involving those same financial institutions.

Respondent argues at length that there was no reason why he should disqualify himself in cases involving financial institutions to which he owes money. Respondent relies on cases from other jurisdictions in urging that a judge need not disqualify himself unless he has a personal proprietary or pecuniary interest in the subject matter of the litigation. Canons 3C and 3D govern disqualification of a judge in great detail and will not be repeated here. Suffice it to say Canon 3C(1) provides in part, "A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned." The Commission concluded, *inter alia,*

"It is hard to believe respondent testified that he did not see anything improper in sitting on cases involving Barber County Savings & Loan while his loans were delinquent and he was not cooperating with them in their collection efforts. Respondent admitted he persisted in hearing their cases, not just once, but regularly. He testified he never disqualified himself. There is no way that a judge's impartiality could go unquestioned in a situation like that. If he rules for the Savings & Loan, he is trying to gain favor, either so they will not harass him anymore for the money he owes, or to encourage them to voluntarily do something to his advantage, or at least it would appear that way. On the contrary, if he rules against the Bank, it is because they are trying to collect their money from him, or at least it would appear that way. Merely treating the Bank as he did is bad enough, but when he sits on cases and decides contested matters, or sits on cases at all involving the Bank while these banking problems are going on, the improper conduct is magnified. His conduct and the pattern of conduct established violations of Canon 1, Canon 2A, Canon 5C(1), (4)(b)."

We reach the same conclusions with regard to respondent's hearing of cases involving other financial institutions that held notes on which he defaulted. At the very least his conduct has the appearance of impropriety and reflects adversely on his position as a judge.

We are not unmindful that several prominent attorneys who regularly practice in the 30th Judicial District testified in support of Judge Yandell and attested to his impartiality, fairness, and ability as a judge. We also recognize that Judge Yandell was recently retained in office by a vote of the electors in the 30th Judicial District. While the testimony and the election results

demonstrate widespread faith in and support for Judge Yandell, that does not alter the fact that the conduct of Judge Yandell reflects adversely upon his ability to uphold the integrity and independence of the judiciary. In addition, it is clear that respondent's actions not only give the appearance of impropriety but were, in fact, improper conduct for a member of the judiciary.

We conclude that the Commission properly found that respondent's actions in dealing with his creditors were fraught with numerous violations of the Code of Judicial Conduct and that such violations have been proved by clear and convincing evidence.

Respondent urges this court to construe K.S.A. 20-2908 to bar removal of a judge for events occurring during his or her prior term. Since the respondent was retained in office in the November 1988 election for a four-year term beginning in January 1989, he argues that his current term cannot be cut short for conduct he committed during his prior term.

Article 3, § 15 of the Kansas Constitution vests the authority for removal of judges in this court:

"[J]udges [other than justices of the supreme court] shall be subject to . . . discipline, suspension and removal for cause by the supreme court after appropriate hearing."

The statute cited by respondent simply outlines the statutory procedures for holding a vote on retention of a judge in districts having adopted nonpartisan selection of judges. In *In re Rome*, 218 Kan. 198, 542 P.2d 676 (1975), as respondent notes in his brief, this court explicitly held:

"Acts or omissions of a judge committed during a prior term of office may be considered in determining whether removal or disciplinary measures are warranted against the judge." 218 Kan. 198, Syl. ¶ 3.

Respondent's argument lacks merit. While this court may consider respondent's retention for another term by the voters as a mitigating factor, such retention certainly does not preclude this court from imposing discipline for respondent's conduct during his prior term.

Respondent's final argument raises the issue of whether the sanction of removal, recommended by the Commission, is warranted under the circumstances of this case. Respondent contends that the recommendation of removal is overly harsh.

The Supreme Court is not bound by the recommendations of

the Commission on Judicial Qualifications. *In re Hammond*, 224 Kan. 745, 746, 585 P.2d 1066 (1978). Supreme Court Rule 623(f) (1988 Kan. Ct. R. Annot. 304) lists the alternative dispositions available to this court:

> "The court may refer the matter back to the commission for such further proceedings as the court may direct, reject the recommendations, dismiss the proceedings, order discipline or compulsory retirement, or make such other disposition as justice may require."

After carefully reviewing the entire record, we concur in the recommendation of the Commission and its conclusion that "the integrity of the judiciary in his [Judge Yandell's] Judicial District has been seriously damaged." We are of the opinion that the appropriate sanction must be removal from office.

IT IS THEREFORE ORDERED that Judge William H. Yandell be and he is hereby removed from office as District Judge of the 30th Judicial District effective forthwith.

IT IS FURTHER ORDERED that the costs of this action be assessed to the respondent and that this opinion and order be published in the official Kansas Reports.

Effective this 14th day of April, 1989.

MILLER, C.J. and SIX, J., not participating.