IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 114,488

In the Matter of TIMOTHY H. HENDERSON, District Judge,
*Respondent.*

ORIGINAL PROCEEDING RELATING TO JUDICIAL CONDUCT

Original proceeding in discipline. Opinion filed April 7, 2017. Findings of the hearing panel are affirmed.

*Todd N. Thompson*, of Thompson Ramsdell Qualseth & Warner, P.A., of Lawrence, argued the cause for the Commission on Judicial Qualifications.

*Thomas D. Haney,* of Stevens & Brand, L.L.P., of Topeka, argued the cause for the respondent.

*Per Curiam*:  This is an original disciplinary proceeding against Honorable Timothy H. Henderson, former District Judge of the Eighteenth Judicial District, sitting in Sedgwick County (Respondent). This is a correlate case to a 2015 proceeding against the Respondent that resulted in a 90-day suspension imposed by this court. See *In re Henderson*, 301 Kan. 412, 343 P.3d 518 (2015). The present case involves Judicial Code charges that he was dishonest to the tribunal in responding to the violations in the earlier case.

In 2014, a panel of the Kansas Commission on Judicial Qualifications (Commission) initiated an investigation of the Respondent under Docket No. 1197. Following an evidentiary hearing, a separate panel (Panel B) found that the Respondent had violated the Kansas Code of Judicial Conduct and recommended to this court that it discipline him by public censure. The panel specifically confirmed misconduct set out in three counts: a pattern of engaging in inappropriate, sexually themed discourse with

1

members of the Sedgwick County District Attorney's office; exhibiting bias or prejudice against an attorney based on socio-political outlooks, as well as engaging in ex parte communications involving an impending legal action; and abusing the power of his office in communications regarding employment of his wife as a public school teacher. The facts are recited in detail in *Henderson,* 301 Kan. 412. After the Respondent filed no exceptions to the factual findings of the hearing panel, this court upheld those findings and imposed a 90-day suspension without pay. 301 Kan. at 427.

On June 2, 2014, after the case had been heard but while it was still pending before the hearing panel, additional complaints against the Respondent were lodged with the Commission. These complaints were referred to an investigator. On October 30, 2014, while Docket No. 1197 case was pending before this court, the Commission filed a Notice of Formal Proceedings under Docket No. 1218, which contained allegations that the Respondent had provided testimony that was not candid and honest in the course of the investigation of Docket No. 1197.

The Respondent filed a motion for the disqualification and recusal of both panels, A and B, of the Commission, alleging that his case was prejudged by the findings in Docket No. 1197. Panel A chose not to recuse, stating that it had conducted only the initial review and investigation and made no findings or conclusions except to refer the complaint to Panel B for hearing. All of the members of Panel B, on the other hand, elected to recuse themselves in order to avoid questions of fairness and propriety, and this court appointed a substitute Panel B.

The matter was investigated by Panel A of the Commission, following which that panel docketed a formal complaint against Respondent and gave due notice. See Supreme Court Rule 611(b) (2017 Kan. S. Ct. R. 473) (discussing procedure for filing of formal proceedings). The complaint alleged three counts of judicial misconduct constituting

2

various violations of Canons 1 and 2 of the Kansas Code of Judicial Conduct (Code), as will be discussed in detail below. See Kansas Supreme Court Rule 601B (2017 Kan. S. Ct. R. 423).

Along with various discovery and scheduling motions, the Respondent moved to stay the proceedings pending the resolution of Docket No. 1197 by this court. The panel denied the motion. *In re Henderson*, 301 Kan. 412, was filed February 27, 2015, approximately 3 weeks after the Respondent filed his motion to stay.

A pretrial conference was held on March 3, 2015, before Chairman Mikel Stout and Vice Chairman Edward Larson, retired Supreme Court justice. At the conference, the parties discussed, among other matters, the need for a bill of particulars, scheduling discovery, and obtaining subpoenas. The examiner explicitly stated that he would not be part of any settlement negotiations proposed by the Respondent, which would instead be addressed directly to the panel. Chairman Stout explained, however, that any settlement would be channeled through the examiner, in part to avoid ex parte communications between the Respondent and the panel.

Around this time, both parties filed numerous motions and responses with the hearing panel relating to discovery, scheduling, and limitations on the scope of the hearing. On July 14, 2015, the Respondent filed a motion seeking recusal of the substitute Panel B members and a determination that all of its proceedings be declared void. The motion asserted that the examiner was serving both as the prosecutor of the investigation and as counsel to the panel in such a manner as to violate the Respondent's right to due process. The examiner filed a response, in which he denied the crucial underpinning of the motion—that he provided some sort of confidential, ex parte legal counsel to the panel. The response averred that the examiner had engaged in no more personal contact with the panel than had counsel for the Respondent and that no ex parte communications

3

took place between the panel and the examiner. The panel unanimously elected to deny the Respondent's motion.

Panel B presided over an evidentiary hearing on August 17-18, 2015. On September 23, 2015, the panel issued findings of fact, conclusions of law, and recommendations. The panel largely adopted the examiner's proposed findings, concluding that the Respondent was neither candid nor honest in his testimony in Docket No. 1197 and that he attempted to "cover over" the inappropriate conduct of which he was accused. Based on the vote of four members, the panel recommended discipline in the form of public censure and a 30-day suspension. One panel member would have recommended a more severe sanction.

The panel's written report, in relevant part, stated as follows:

**"FINDINGS OF FACT, CONCLUSIONS OF LAW, AND RECOMMENDATION**

"Pursuant to Rule 611(b) and at the direction of Panel A of the Commission on Judicial Qualifications, a Notice of Formal Proceedings was issued on October 20, 2014, against Timothy H. Henderson, District Judge of the 18th Judicial District. The Notice of Formal Proceedings alleged that Respondent engaged in conduct which violated Rule 1.2 of Canon I and Rules 2.5 and 2.16 of Canon 2 of the Kansas Code of Judicial Conduct. It was more specifically alleged that at a hearing in Docket No. 1197, Respondent provided testimony that was not candid and honest that his testimony included unfounded responses to questions posed; and that his statements lacked probity.

"On August 17 and 18, 2015, a public hearing was held in Topeka, Kansas, before substitute Panel B of the Commission on Judicial Qualifications. Members of the Panel present for the hearing were: Mikel L. Stout, Chair; Justice Edward Larson, Vice-Chair; Bruce Buchanan; Judge Roger L. Gossard; and Thomas V. Murray. Carolyn Tillotson announced her recusal to the Chair of the Panel before the hearing and took no part in the hearing. The Examiner for the Commission on Judicial Qualifications, Todd

4

N. Thompson, appeared in support of the Notice of Formal Proceedings. Respondent appeared personally and through his counsel, Thomas D. Haney.

"During the hearing, substitute Panel B accepted stipulations and heard evidence on the record. The Panel then requested the Examiner and the Respondent each submit their respective proposed findings of fact and conclusions of law. Each party submitted their respective findings and conclusions on September 14, 2015.

"Having considered the evidence and the respective proposed findings and conclusions of the parties, substitute Panel B, by an affirmative vote of four or more members, makes the following findings of fact, conclusions of law, and recommendations concerning discipline.

## "MOTION TO DISMISS

"In support of a Motion to Dismiss these charges, Respondent presented evidence through Heather Smith, Clerk of the Appellate Courts, concerning the initiation of these proceedings. The initial complaint that gave rise to these proceedings was received by the investigator of Docket [No.] 1197, Terry Morgan, on June 2 or 3, 2014. Mr. Morgan forwarded that complaint to Carol Green, Ms. Smith's predecessor, and the previous examiner whose term had ended. A new examiner would not be under contract until July 1. Ms. Green arranged a conference call to advise Panel B that a witness had contacted Mr. Morgan with evidence Ms. Green believed required investigation and could result in an additional count. No specifics of the additional information were given to Panel B. At that time, Panel B had Findings and Conclusions in draft form.

"After this conversation with Ms. Green, Panel B initially agreed to reopen the case and consider the additional information but took no action awaiting the arrival of their new examiner. After new counsel arrived on July 1, Panel B released their Findings of Fact and Conclusions of Law in Docket No. 1197 and the new information that had been initially provided to Mr. Morgan was received by Panel A. Panel A performed investigation and review they deemed necessary and directed the formal charges upon which this action is based in Docket No. 1218.

"The Motion to Dismiss is denied. Panel B did not participate in the investigation, review, and decision to initiate the formal charges on which we proceed here. This matter was properly handled by Panel A as shown by the testimony and

documentation introduced. Notifications of the complaint and investigation were provided to Respondent through counsel in a timely manner and no prejudice to the Respondent is shown. This substitute Panel B was appointed when the original Panel B recused.

"We specifically find and hold there is no factual or legal basis to dismiss this matter as requested by the Respondent on the principles of Res Judicata, Collateral Estoppel, and Public Policy Considerations.

## "FINDINGS OF FACT

"This Panel finds that the following facts were established at the hearing by clear and convincing evidence:

"1.     On May 15 and 16, 2014, in Docket No. 1197 ('May Hearing'), Respondent testified on his own behalf. The Examiner offered portions of Respondent's testimony from the May Hearing in evidence. This evidence was stipulated to by Respondent.

"2.     Respondent offered the entire transcript of the May Hearing, which the Panel accepted. Thus, all of Respondent's testimony from the May Hearing is in evidence. (Respondent did not testify at the hearing on August 17 and 18, 2015. Thus all future references to Respondent's testimony are to his testimony at the May hearing in 2014.)

### "The Stitch Story

"3.     Respondent testified that a story he told about a gynecologist offering to add an extra stitch after the birth of one of his children ('the Stitch Story') was not funny, that he never thought the Stitch Story was funny, and that he was appalled and offended by the Stitch Story.

"4.     Respondent testified that the single time the Stitch Story was mentioned by him was in the late 1990s when he was considering making a complaint against a doctor and told the story to some other attorneys.

"5.     Respondent denied 'absolutely' that he told the Stitch Story to Assistant District Attorney Melissa Green.

6

"6.     The Panel finds that Respondent told the Stitch Story multiple times to several witnesses since 2000.

"7.     The Panel finds that Respondent told the Stitch Story in a humorous manner.

"8.     The Panel finds that in approximately October 2006, near the time she gave birth to her second child, Respondent told the Stitch Story to ADA Melissa Green.

## "The Wife's Job/KPERS

"9.     Around the end of the school year in June 2012, Respondent was engaged in a court business meeting with Lanora Nolan (now Franck), a Juvenile Justice Education Liaison for Sedgwick County. Ms. Nolan was also a board member of the Wichita Board of Education.

"10.    In this meeting, Respondent asked Ms. Nolan to investigate the reason his wife, a school teacher, was not offered a contract for the next year. Ms. Nolan looked into the matter and found that, contrary to what Respondent believed, Respondent's wife had been offered a contract for a full-time position, but had turned it down. Ms. Nolan communicated this information to Respondent.

"11.    Later, Respondent contacted Ms. Nolan and asked if there might be a half-time position available for his wife and followed with several other contacts on that subject into the Fall of 2012.

"12.    Respondent testified there was no attempt by him to seek assistance from Ms. Nolan with regard to obtaining employment for Respondent's wife.

"13.    Respondent testified his conversation with Ms. Nolan was a 'throwaway conversation.'

"14.    Respondent testified that Ms. Nolan was only asked by Respondent to make certain the paperwork was correct so that Respondent's wife's KPERS funds could be rolled over or used to pay for college.

"15.    Respondent's version of the Nolan communications was refuted by the testimony of Ms. Nolan and by documentary evidence offered during rebuttal testimony by Ms. Nolan (emails sent by Respondent).

7

### "The 'Reach Around' Comment

"16.     Assistant District Attorney Melissa Green made an 'over-the-hill' birthday cake for court reporter Jennifer Redd's birthday party.

"17.     Respondent admitted that he pointed to a sign on the cake showing an elderly couple, and mentioned a 'reach-around' to Ms. Green.

"18.     Ms. Green said the comment was:  'Look, it looks like she's giving him the reach-around.'

"19.     The elderly couple symbol was the only one that Respondent pointed to or commented on.

 "20.     Respondent agreed he had referred to the sign as a 'reach-around' but testified his 'reach-around' comment was a reference to Mrs. Henderson assisting Respondent with walking due to Respondent having just turned 50 years of age.

"21.     At another point Respondent testified that his 'reach-around' comment was an attempt to make a joke about his body size.

"22.     Respondent testified the 'reach-around' comment had no sexual connotation, and that the phrase was not known to him to have any sexual meaning.

"23.     Respondent testified the comment was a reference to 'feeling the aches and pains' of his age and that before long his wife would have to 'reach around and help me like that.'

"24.     Respondent's explanations of the meaning of his comment are not credible.

### "The Child Laborer Comment

"25.     We find there was no clear and convincing evidence to show any ethical violation by the Respondent as it relates to the complaint concerning the comments about the minor child laborer.

### "CONCLUSIONS OF LAW

"1.     The Notice of Formal Proceedings alleges that Respondent's conduct violated the provisions of Rule 1.2 of Canon 1 and Rules 2.5 and 2.16 of Canon 2.

"2.     Canon 1 provides in part that a judge will uphold and promote the integrity of the judiciary, and will avoid impropriety and the appearance of impropriety.

"3.     Rule 1.2 provides that a judge will act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary, and will avoid impropriety and the appearance of impropriety.

"4.     Comments [1], [3], and [5] of Rule 1.2 provide:

"[1]     Public confidence in the judiciary is eroded by improper conduct and conduct that creates the appearance of impropriety. This principle applies to both the professional and personal conduct of a judge.

"[3]     Conduct that compromises or appears to compromise the independence, integrity, and impartiality of a judge undermines public confidence in the judiciary. Because it is not practicable to list all such conduct, the Rule is necessarily cast in general terms.

"[5]     Actual improprieties include violations of law, court rules, or provisions of this Code. The test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge violated this Code or engaged in other conduct that reflects adversely on the judge's honesty, impartiality, temperament, or fitness to serve as a judge.

"5.     Rule 601B defines 'impropriety' to mean 'conduct that violates the law, court rules, or provisions of this Code, and conduct that undermines a judge's independence, integrity, or impartiality.'

"6.     Rule 601B defines 'Integrity' to mean 'probity, fairness, honesty, uprightness, and soundness of character.'

"7.     Canon 2 states that a 'judge shall perform the duties of judicial office impartially, competently, and diligently.'

"8.     Rule 2.5 states that a 'judge shall cooperate with . . . court officials in the administration of court business.'

"9.     Rule 2.16 states that a 'judge shall cooperate and be candid and honest with judicial and lawyer disciplinary agencies.'

"10.     The comment to Rule 2.16 states that 'Cooperation with investigations and proceedings of judicial and lawyer discipline agencies, as required in paragraph (A), instills confidence in judges' commitment to the integrity of the judicial system and the protection of the public.'

9

"11.    Rule 609 states that 'the use of dilatory practices, frivolous or unfounded responses or argument, or other uncooperative behavior may be considered a violation of Canon 1 of the Code of Judicial Conduct.'

"12.    The failure to be candid and the attempt to twist or obfuscate the facts are dilatory and uncooperative acts.

"13.    Misrepresentation in a disciplinary action in an effort to justify one's inappropriate conduct reflect adversely on a judge's honesty and fitness to serve as a judge, and are particularly egregious violations of Canons 1 and 2.

"14.    All of the Panel members conclude that Respondent's conduct, established by clear and convincing evidence, violated Rule 1.2 of Canon 1 and Rules 2.5 and 2.16 of Canon 2.

## "RECOMMENDATION

"The Panel has considered all of the evidence, and had the opportunity to observe the demeanor of the witnesses testifying at the hearing. Respondent elected to not testify at his hearing.

"The members of this Panel have noted that Panel B and the Court have both expressed their conclusions that many of the statements made by Respondent in Docket No. 1197 were not credible.

"We do not know whether that lack of credibility was considered in the recommendation and action in that matter, but it was obviously the critical element in the three instances in which this Panel finds the Kansas Code of Judicial Conduct was violated.

"Based upon the evidence presented, it is the considered judgment of all members of the Panel that Respondent's testimony in Docket No. 1197:  (1) was not candid or honest; (ii) lacked probity; (iii) demonstrated a disregard for the judicial discipline process; and (iv) was an attempt to cover over the inappropriate conduct of which he was accused and was found to have committed. In some instances, Respondent's testimony changed in questioning on the same subject. In other instances, his testimony was contradicted by documents and other evidence the Panel found extremely credible.

10

"Pursuant to Supreme Court Rule 620, and based on the vote of four members, the Panel recommends to the Supreme Court of the State of Kansas that Respondent be disciplined for the violations by public censure and a 30 day suspension. One panel member would recommend a more severe sanction. In reaching this recommendation, the Panel has considered the duties that Respondent violated and weighed the evidence available to the Panel of the aggravating and mitigating factors. The Panel notes that Respondent acted with a selfish motive as he attempted to disguise his inappropriate conduct by attempting to recast his conduct as innocent and ignorant ('Reach Around') or de minimis (Wife's Job/KPERS), and by denying the conduct that occurred (multiple telling of the 'Stitch Story').

"The Panel has no sense that Respondent made a full and free disclosure of his actions. Nor did his misleading statements demonstrate a cooperative attitude toward the disciplinary proceedings.

"As mitigating factors, we note that Respondent provided evidence of significant involvement in and commitment to the juvenile justice system, and that prior to the ruling in Docket No. 1197, Respondent had no disciplinary record.

"Testimony from a member of the Kansas bench that lacks candor and probity is unacceptable under any circumstances but is particularly perverse when it occurs in the course of a disciplinary proceeding.

"Providing testimony that lacks, in significant measure, credibility and candor is prejudicial to the administration of justice. It exposes the legal profession and the courts to ridicule and loss of respect. This conduct seems to this Panel to be more significant than the underlying conduct the Respondent didn't disclose."

The Respondent filed timely written exceptions to the panel's findings of fact and conclusions of law, and this court placed the hearing on a docket for disposition of the case. Then, on August 2, 2016, before the scheduled hearing date, the Respondent was defeated in his primary bid for reelection. The Respondent filed a document on September 7, 2016, averring that he was resigning from his position as district judge and requesting that this court declare the matter moot and terminate further proceedings. In a

11

preliminary order, the court denied the requests on present showing and gave the parties leave to discuss the issues at oral argument.

## DISCUSSION

This Court has jurisdiction over this matter as provided by Article 3, § 15, of the Kansas Constitution, which confers on the Kansas Supreme Court the authority to impose discipline, suspension, and removal for cause of district judges in this state. See *In re Rome*, 218 Kan. 198, 202-03, 542 P.2d 676 (1975). Notwithstanding the availability of sanctions, the issues before us are matters of great public interest concerning the honor and dignity of the judiciary.

The Respondent suggests that this court lost jurisdiction over him as a result of his resignation from his judicial office. This argument is inconsistent with prior decisions of this court and with the policies that govern the discipline of judges.

In *In re Hammond*, 224 Kan. 745, 746, 585 P.2d 1066 (1978), the respondent judge was found to have engaged in inappropriate sexual conduct with employees. Following issuance of the Commission's recommendation, the judge retired from the bench because of severe health problems. The court concluded that the sanctions of suspension or removal from office were unnecessary because of the judge's retirement, but that public censure and the imposition of costs were appropriate remedies. 224 Kan. at 746. We have also held that a judge whose term has expired but who was retained for a new term is nevertheless subject to discipline for conduct occurring during the prior term. *In re Yandell*, 244 Kan. 709, 717, 772 P.2d 807 (1989).

Other states have reached similar conclusions. In *In re Thayer*, 145 N.H. 177, 761 A.2d 1052 (2000), the court held that resignation from office by a state supreme court

associate justice did not render an investigation into allegations of misconduct moot. The court noted that discipline in the form of censure or conditional suspension was still an option and a controversy therefore still existed. 145 N.H. at 181-82. The court further held that, even if no sanctions were available, the issues under investigation would qualify as issues of significant public concern and would therefore remain within the court's jurisdiction. 145 N.H. at 182. See also *In re Johnstone*, 2 P.3d 1226 (Alaska 2000) (holding that judicial conduct commission retains jurisdiction to investigate retired judge's alleged misconduct within statutory 6-year limitation period).

The duty to protect the public from malfeasance by judges does not terminate the moment a judge steps down from office. A judge may not evade public responsibility and our jurisdiction based on the misconduct simply by stepping away from the bench when the misconduct is revealed. As the Alaska Supreme Court noted in *Johnstone*, the purpose of judicial discipline is the protection of the public. One component of that protection is keeping the public informed of judicial transgressions and the consequences. This way, the public "knows that its government actively investigates allegations of judicial misconduct and takes appropriate action when these allegations are proved. Judicial discipline thus protects the public by fostering public confidence in the integrity of a self-policing judicial system." 2 P.3d at 1234.

The purpose of judicial discipline is to maintain the honor and dignity of the judiciary and the proper administration of justice rather than to punish the individual. *State ex rel. Comm'n on Judicial Qualifications v. Rome*, 229 Kan. 195, 206, 623 P.2d 1307 (1981). Public trust is essential to the effective operation of the judicial system, and the conduct of one judge may have a significant adverse impact on the public perception of the entire judicial system. *In re Robertson*, 280 Kan. 266, 272, 120 P.3d 790 (2005).

13

The conduct of which the Respondent is accused, including lying to the hearing panel, took place while he was occupying a position of judicial authority. In his response to the findings of the hearing panel and even after he resigned from his office, the Respondent refused to acknowledge wrongdoing. It would be disrespectful both to the public and to the witnesses whose reputations he impugned if we were to abdicate our responsibility of judicial supervision by dismissing the complaint merely because the Respondent walked away from his responsibilities.

We conclude that we have disciplinary jurisdiction over conduct that the Respondent engaged in while he was serving as a district court judge. It is well settled that courts have inherent powers to carry out the functions and duties imposed on them. *State v. Brady*, 156 Kan. 831, 841, 137 P.2d 206 (1943). This court must have the power to protect its own jurisdiction, its own process, and its own proceedings. *C. K. & W. Rld. Co. v. Comm'rs of Chase Co.*, 42 Kan. 223, 224-25, 21 Pac. 1071 (1889).

The hearing panel found that the Respondent made dishonest statements under oath and was not candid with the investigation into his conduct. He maintains that the evidence is insufficient to support the panel's findings.

The standard of proof in a judicial qualifications proceeding is one of proof by clear and convincing evidence. Rule 620(a) (2017 Kan. S. Ct. R. 477); *Rome*, 218 Kan. at 206. Clear and convincing evidence is evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable. [Citations omitted.]" *In re Patterson*, 289 Kan. 131, 134, 209 P.3d 692 (2009).

This court views the findings of fact, conclusions of law, and recommendations of a disciplinary panel as advisory only, but it gives the final hearing report the same dignity as a special verdict by a jury or the findings of a trial court. The disciplinary panel's

report will therefore be adopted when it is amply sustained by the evidence, but not when it is against the clear weight of the evidence. When the panel's findings relate to matters about which there was conflicting testimony, this court recognizes that the panel, as the trier of fact, had the opportunity to observe the witnesses and evaluate their demeanor. This court therefore does not reweigh the evidence or pass on credibility of witnesses. The court merely examines any disputed findings of fact and determines whether clear and convincing evidence supports the panel's findings. If so, the findings will stand. The court does not have to restate the entire record to show substantial competent evidence to support the panel's findings. See *In re Comfort*, 284 Kan. 183, 190, 159 P.3d 1011 (2007).

The panel in Henderson's prior case found that the Respondent's explanations were not credible. He did not file exceptions to the panel's findings, and the findings were therefore deemed "conclusive." *Henderson*, 301 Kan. at 422. In any event, he presented no evidence at the second hearing conflicting with the original findings. Additional testimony was heard, however, from witnesses who supported the original findings. Their testimony not only reinforces our earlier determination that the charges had been conclusively proven, it also illustrates the dangerous undermining of faith in the judicial system resulting from the Respondent's lack of candor.

For example, a court services officer testified that she heard the Respondent jokingly repeat the "Stitch" story many times, and she concluded that it was "upsetting" to her that the administrative judge for whom she worked for so many years "would take an oath to tell the truth and then blatantly tell that he had never told the story when he told it all the time." A Juvenile Justice Education Liaison for the Sedgwick County Department of Corrections testified that she was "very upset" when she heard the Respondent's testimony at the first hearing, because "to have your presiding judge take an oath and not tell the truth was really upsetting."

15

The hearing panel in this case found violations of rules separate and beyond those in the original case, specifically, violations of Rule 2.5 (2017 Kan. S. Ct. R. 435), relating to cooperation with court officials in the administration of court business; and Canon 2, Rule 2.16 (2017 Kan. S. Ct. R. 444), requiring that judges "cooperate and be candid and honest with judicial and lawyer disciplinary agencies." Given the Respondent's waiver of exceptions to the prior findings and the additional, credible testimony of witnesses in the present case, we agree that these findings were supported by clear and convincing evidence.

The Respondent also asserts that procedural improprieties in the conduct of his investigation violated his constitutional right to due process.

Constitutional due process requirements apply in professional disciplinary proceedings. See *In re Daugherty*, 277 Kan. 257, 261, 83 P.3d 789 (2004). A disciplinary proceeding does not, however, require the full panoply of rights afforded the defendant in a criminal proceeding. See *People v. Harfmann*, 638 P.2d 745, 747 (Colo. 1981); *Moncier v. Board of Professional Responsibility,* 406 S.W.3d 139, 156 (Tenn. 2013). Whether a right to due process has been violated is a question of law over which this court exercises unlimited review. *Davenport Pastures v. Board of Morris County Comm'rs*, 291 Kan. 132, 139, 238 P.3d 731 (2010).

The Respondent contends that the examiner in this case served in dual roles that undermined the legitimacy of the proceeding. He argues that the examiner both prosecuted the action and acted as a confidential advisor to the hearing panel. He relies primarily on several statements by the examiner and by panel members to imply that ex parte communications took place between the examiner and the panel or that the panel considered the examiner to be a confidential advisor.

The fact that the Commission serves the dual functions of investigator and factfinder does not inherently produce a biased tribunal that violates a judge's right to due process. *Rome*, 218 Kan. at 204-05; see also *Pork Motel, Corp. v. Kansas Dept. of Health and Environment*, 234 Kan. 374, 384, 673 P.2d 1126 (1983) (combination of investigating and judging functions in an agency does not violate due process).

Aside from two passing and ambiguous excerpts from the record, the Respondent provides nothing of substance indicating that Todd Thompson served in any role except that of examiner, and Thompson emphatically denies that he had any ex parte communications with the panel. The Respondent gives no reason to question Thompson's veracity and did not attempt to develop a record of any such due process violation during the course of the evidentiary hearing.

The Respondent also argues that the Commission initiated the investigation into this case without following this court's procedural rules. His argument appears to be that no examiner had been designated at the time that the case was referred for investigation, and the investigation was therefore improper and violated his right to due process.

Supreme Court Rule 609 (2017 Kan. S. Ct. R. 472) sets out the process for initiating an investigation:

> "An investigation by or under the direction of the examiner shall be made before formal proceedings are instituted. Such investigation may be made on a panel's own motion, and shall be made when a panel has received a complaint indicating that a judge has failed to comply with the Code of Judicial Conduct or has a disability that seriously interferes with the performance of judicial duties. The judge shall be contacted during the investigation, and shall be advised informally that an investigation is being made, and the subject thereof. A judge shall cooperate with the commission or a hearing panel. A judge

17

shall, within such reasonable time as the commission or hearing panel may require, respond to any inquiry concerning the conduct of the judge. The failure or refusal of the judge to respond may be considered a failure to cooperate.

"The failure or refusal of a judge to cooperate in an investigation, or the use of dilatory practices, frivolous or unfounded responses or argument, or other uncooperative behavior may be considered a violation of Canon 1 of the Code of Judicial Conduct."

The Respondent contends that the examiner in his previous proceeding had stepped down before, and the examiner in the present proceeding did not begin serving until after the new Rule 609 letter had been sent. The parties stipulated that the previous examiner, Edward G. Collister, stepped down in mid-May of 2014. Thompson was appointed on July 1. The prior Panel B received e-mail complaints about the veracity of the Respondent's hearing testimony on June 2, 2014, which would eventually result in the new complaint and hearing in the present case. The first panel referred the complaint to an investigator before the Commission formally appointed Thompson. The Respondent submits that the earlier Panel B should not have been involved in any way in the investigation and that he should have been informed immediately of any new charges.

Based on these arguments, Respondent made an oral motion to the Docket No. 1218 Panel B that it dismiss the case. He stated to the panel:

"[F]or almost a month everybody knew what was going on except Judge Henderson. Everybody knew that there was another investigation and the Panel had been told information which they shouldn't have been told. And for that reason alone the Panel should not have continued to deliberate and issue a ruling after being advised by the Clerk of this new information."

The examiner responded that the Commission followed the Rule 609 mandates. It received a complaint, it appointed an examiner, and, within 2 weeks after that

18

appointment, the Respondent was informed that an investigation had been initiated. The panel agreed with the examiner and denied the motion to dismiss.

The Respondent apparently asks this court to hold that Rule 609 requires instantaneous action: immediately upon receiving a complaint, the Commission must appoint an examiner and simultaneously notify the judge that an investigation is being made. Any time lag between these steps results in a violation of the Rule and of due process.

This requirement of immediate and simultaneous action is not to be found in Rule 609. The Rule allows a panel to initiate an investigation on its own motion and is to be carried out when "a panel" has received a complaint. The Rule requires that the judge shall be contacted "during the investigation" and shall be informed "informally" of the investigation. Panel B in the prior proceeding received a complaint, it initiated an investigation, appointed an examiner within a few weeks, and notified the Respondent of the additional charges. No rules violations can be discerned in this process.

Even if there is some question about whether the Commission acted in a timely manner in appointing an examiner and in informing the Respondent of the new complaints, we can find no resulting prejudice to the Respondent. A basic requirement of due process is the right to a fair hearing before a fair tribunal. See, *e.g.*, *Turner v. Louisiana*, 379 U.S. 466, 472, 85 S. Ct. 546, 13 L. Ed. 2d 424 (1965); *State v. Sherman*, 305 Kan. 88, 98, 378 P.3d 1060 (2016); *Davenport Pastures,* 291 Kan. at 139. Asserted due process violations are subject to harmless error analysis. See, *e.g.*, *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012); *State v. Martinez*, 288 Kan. 443, 450, 204 P.3d 601 (2009). If there are any such violations in the present case, the Respondent fails to articulate any tangible resulting harm.

19

Finally, the Respondent argues that the doctrines of res judicata or claim preclusion bar prosecution of the present proceedings. He notes that all of the allegations of malfeasance in the present case are grounded in his testimony in Docket No 1197. In the prior case, the panel found, and this court agreed, that much of Henderson's testimony was "not credible." See *Henderson*, 301 Kan. at 414, 415, 417, 418, 421, 422, 424. The present case arises from complaints alleging that he was dishonest in his testimony in case 1197, and he contends those complaints have already been addressed.

These preclusion arguments do not apply under the procedural postures of Docket Nos. 1197 and 1218. In No. 1197, no charge was made that the Respondent was dishonest in his responses to the other charges. Although the No. 1197 Panel B reached conclusions about the Respondent's credibility, it did not specifically find that he had willfully made false statements. These claims could not have been made before that panel because the panel was empowered only to evaluate the charges set out in advance, as the notice element of due process requires. A new case, No. 1218, was required in order to subject the Respondent to sanctions for his dishonest testimony in No. 1197.

It would have been improper to include the new charges in the earlier proceeding. Because the charges arose out of the Respondent's testimony in that proceeding, the Commission could not have given him meaningful notice of the new charges. In *In re Tocco*, 194 Ariz. 453, 457-58, 984 P.2d 539 (1999), the court held that charges of misconduct arising out of testimony presented at a misconduct hearing may not be included as ethical violations in the original complaint because of a lack of notice or opportunity to defend. See *Attorney Grievance Com'n of Maryland v. Mooney*, 359 Md. 56, 81-82, 753 A.2d 17 (2000). But charges of untruthfulness before the tribunal investigating unethical conduct "might serve as the basis for subsequent formal charges" if adequate notice is provided. *Attorney Grievance Com's of Maryland v. Goldsborough*, 330 Md. 342, 361-62, 624 A.2d 503 (1993).

20

The Respondent cites *State v. Russell*, 227 Kan. 897, 610 P.2d 1122 (1980), for the proposition that principles of res judicata apply to disciplinary proceedings. The *Russell* court, however, did not apply res judicata as the disciplinary respondent urged it to do. The court discussed the doctrine but found it inapplicable to the circumstances before it. 227 Kan. at 907. In fact, this court has suggested that legal conclusions in judicial qualifications cases do *not* have any controlling significance beyond the immediate case to which they were applied. "The hearing panel's conclusions of law are limited to its factual findings in a particular case." *In re Pilshaw*, 286 Kan. 574, 579, 186 P.3d 708 (2008).

Other courts have declined to give res judicata protection to disciplinary respondents. In *In re Lee*, 336 So. 2d 1175, 1177 (Fla. 1976), the court held that the doctrines of res judicata and double jeopardy do not apply to judicial disciplinary proceedings because individual incidents of misconduct may be subject to separate disciplinary proceedings but may be readjudicated in light of continuing misconduct. See also *In re Kelly*, 238 So. 2d 565, 570 (Fla. 1970); *In re Bennett*, 301 Md. 517, 524, 483 A.2d 1242 (1984); *In re Discipline of Harding*, 104 P.3d 1220, 1224 (Utah 2004) (double jeopardy not a bar in disciplinary proceeding because not a criminal proceeding).

As a separate violation, the Respondent's dishonesty in the first proceeding could not have been raised at that time because of due process notice requirements. The only "law of the case" appears to be his failure to file exceptions to the factual findings, and those findings serve to provide uncontroverted evidence of his dishonesty for the purposes of the present proceeding.

21

Here, the Respondent's misconduct undermines the public's faith in the very judicial office he took a sworn oath to uphold. Because the Respondent is no longer serving as a judge, the sanctions of suspension or removal are not available.

We conclude the findings of the panel are supported by clear and convincing evidence.

IT IS THEREFORE ORDERED that this opinion shall be published in the official Kansas Reports.

LUCKERT and BEIER, JJ., not participating.
JOSEPH L. MCCARVILLE, III, District Judge, assigned.[1]
MARITZA SEGARRA, District Judge, assigned.[2]

---

[1]**REPORTER'S NOTE:** District Judge McCarville, III was appointed to hear case No. 114,488 vice Justice Luckert under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution.

[2]**REPORTER'S NOTE:** District Judge Segarra was appointed to hear case No. 114,488 vice Justice Beier under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution.